[No. 5870.]

## FREEMAN v. PETERSON ET AL.

1. **Appeals—Harmless Error**—The admission of incompetent evidence in an action tried without a jury will not reverse, where, rejecting this, sufficient remains to support the decree.—(104, 105)

2. **Resulting Trust—Evidence**—Evidence examined and held insufficient to establish a resulting trust.—(105-108)

3. **Evidence — Verbal Declarations —** Uncorroborated verbal declarations are to be weighed with caution.—(107)

*Appeal from San Miguel District Court*—Hon. THERON STEVENS, Judge.

Mr. L. C. KINIKIN, for appellant.

Messrs. FITZGERALD & BROWN, for appellee.

Mr. JUSTICE HILL delivered the opinion of the the court:

On January 26, 1905, Charles Peterson, who was a man of mature years and an uncle of the appellant, was found dead in his cabin at or near Telluride in San Miguel county. It appears he was living alone. Near his bed a book was found, containing some writing of the deceased, and probably written by him in anticipation of his death, which reads as follows:

"Telluride, Jan. 25, 1905.

"To Ernest Freeman:

"You are entitled to one-half of my mining property and the rest goes to square my bills. Also collect all my old accounts what I had before I went in with Barney. Do not pay any gambling debts; it is 35.00 Andy McMahon, 25.00 Wagoner, 100 to Woe-den, 100 to Talman, 150 Gust Paro in note; I have paid him 25. Chas Peterson. Barney, you take saloon as it stands, collect all our bills and pay out as far as it goes and if it is short take of the half of interest in rest of my property to satisfy rest of bills.

Chas. Peterson, Jarves and Piquard note is gambling debt. Check drawed last night is for gambling.''

At the time of the death of the deceased, there stood in his name certain interests in certain mining claims, as well as contracts for interests in others, also a small tract of land and some personal property. He was in debt, and it was claimed by the appellees the debts were equal to the value of his property.

Thereafter, the appellant, who was a nephew of the deceased, had himself appointed as administrator of his uncle's estate, qualified as such, filed the necessary inventories, which included the interests in the real estate above referred to, out of which this controversy arose. He collected some outstanding bills, paid some of the debts, and then resigned as the administrator and brought this action against all of the heirs of the deceased, except Mrs. C. L. Fridman, setting up the facts in his complaint, that the defendants, with Mrs. Fridman, were surviving sisters and sole heirs at law of the deceased; that Peterson, at the time of his death, was possessed of certain real estate as follows, an undivided one-half interest in the Gertrude lode mining claim, an undivided one-fourth interest in the Modena lode mining claim, an undivided one-fourth interest in the Lucky and Little Crystal Pocket lode mining claim and an undivided one-third interest in the Mobile and Marie lode mining claim, all situate in Upper San Miguel mining district; that upon the death of Peterson the title vested in the defendants and the said Mrs. C. L. Fridman in equal shares, the deceased having left no widow, children, father, mother or brother him surviving; alleged that while the title to the property stood in the name of Peterson, he held the same in trust to the extent of an undivided one-half interest

of the interest aforesaid, for the use and benefit of the plaintiff; that said properties were purchased and acquired with the joint funds of plaintiff and deceased, and their joint funds and labors were used and appropriated in the development of the properties; that, by mutual agreement between them, the titles were taken and held in the name of Peterson on condition that the half interest of plaintiff would be conveyed upon demand; that ever since acquirement of titles the lands have been in the joint possession of the parties, and said deceased held out and represented plaintiff as an equal owner with him; states the refusal of the heirs, except Mrs. Fridman, to convey to him; claims there was then no administrator of said estate and prayed judgment that he be decreed to be the owner of one-half of the interest in the title held by Peterson at the time of his death; that defendants be ordered to convey the same to him, etc.

The defendants denied the material allegations of the complaint effecting their interest in the property.

After the resignation of the appellant as administrator, Mr. Martin L. Brown was appointed administrator of the estate, qualified and by proper pleadings was allowed to intervene as such, filed an answer with similar denials as the other defendants.

Trial was had to the court without a jury, who found the facts against the appellant and ordered judgment accordingly, from which appellant appeals to this court.

The first alleged error assigned for our consideration is the administrator was allowed to testify in violation of §§ 4816 and 4818 of Mills' Ann. Stats. We do not deem it necessary to pass upon this question. The trial was to the court and in our opinion there is sufficient unobjectionable evidence to sustain

its findings and decree; in such cases error based on the alleged admissions of illegal evidence will not be considered.—*Kilham v. W. B. & S. D. Co.,* 30 Colo. 367; *Rowe v. Johnson,* 33 Colo. 469.

The second assignment of error is that the judgment is against the law and the evidence. It has been earnestly urged by counsel for appellant, that the evidence shows that Peterson and Freeman, for several years prior to Mr. Peterson's death, were partners in the saloon business in Telluride, as well as partners in the mining business; that the saloon business was run in the name of Peterson and the title to most of the mining property was held in his name, and it was only upon the refusal of four of the five sisters, sole heirs, to make a deed for one-half interest belonging to Freeman that the latter brought this suit to recover, and he claims by certain admissions of Peterson and the writing by him in the book above quoted, made immediately prior to his death, were sufficient to warrant the court in finding that Freeman was a partner and half owner with Peterson in these mining properties.

For the purpose of satisfying ourselves as to this contention, we have read the original transcript of the evidence, and, after doing so, are satisfied that the well-known rule of law "where evidence is conflicting, the finding of the trial court should not be disturbed, except in certain cases," of which this does not appear to be one, should not only apply here and the findings of the lower court not be disturbed, but, by our examination of the evidence, we can come to no other conclusion than that found by the trial court, and are of the opinion, had the defendants failed to introduce any evidence, the findings of the lower court should have been the same.

It is contended that the evidence shows that Freeman and the deceased were copartners in the

saloon business in Telluride, from which partnership moneys were received and used in the mining partnership. We think the evidence fails to support this contention. The license for the saloon was procured in Mr. Peterson's name; he conducted it alone up to the time the man called Barney appears to have gone into the business with him as a partner, and we think the statement itself contained in 'the book, presumably his last writing, which counsel seem to rely upon, tends to disprove his contention wherein it is stated, "Also collect all my old accounts what I had before I went in with Barney," and tends to show that he was operating the saloon alone and not with Mr. Freeman as a partner, otherwise he would have used the words "our old accounts" instead of "my old accounts," and also "we had" instead of "I had," the same as he did in that portion of the writing addressed to the man called Barney, where he used the words "our bills," and we are unable to find any satisfactory evidence where it is shown any partnership funds were ever used in the purchase of these properties, or where there was ever any joint possession of them by both Freeman and Peterson. The evidence does show that Mr. Peterson not only took the title to the mining property in his own name, but, in certain instances where moneys were to be paid thereafter therefor, they were paid, after the time of his death, by Mr. Freeman as the administrator of his estate, and out of his (Peterson's) property. The evidence further shows that Mr. Freeman had mining claims of his own in this same district in which Mr. Peterson had no interest.

It is true, there is some evidence which tends to show that the two parties sometimes worked together. The appellant was the nephew of the deceased and sometimes lived with his family and purchased the provisions for their support. It was shown that he

felt responsible for having brought him to Colorado, and intended to do well by him, and we have no doubt when he became aware of his sudden impending death that he intended, by this writing in the book, to make a gift or present to his nephew of an undivided one-half interest of his interest in these properties and that the instrument might have been intended, upon his part, as an effort to do this, but counsel do not rely upon it in this manner, but claim that this writing, taken in connection with the parol evidence upon the subject and the verbal statements of the deceased, was sufficient to establish a resulting trust. To this we cannot assent.   While it is true there was evidence tending to show that the deceased made certain statements that the appellant was a partner with him in the mining business, this evidence was conflicting as to the exact statements made, and the witnesses were at variance as to the substance thereof. It has repeatedly been held that verbal admissions uncorroborated by other facts should be weighed with great caution.—*Wittick v. Keiffer,* 31 Ala. 199; *Prater v. Frazier,* 11 Ark. 249; *Ector v. Welsh,* 29 Ga. 443; *Richmond, etc., R. Co. v. Kerler,* 88 Ga. 39; *Chandler v. Schoonover,* 14 Ind. 324; *Saveland v. Green,* 40 Wis. 432; *Ringo v. Richardson,* 53 Mo. 385; *Dupre v. McCright,* 6 La. Ann. 146; *Chicago, etc., R. Co. v. Button,* 68 Ill. 409; *Johnson v. Filson et al.,* 118 Ill. 219.

In this case it is claimed that the moneys paid for these properties were the joint funds of the appellant and the deceased, but the proof offered in support thereof does not sustain this contention.   A part of this money was paid by Mr. Freeman when he was the administrator of the estate as such, and admitted by him to have been out of funds belonging to the estate; others were probably from moneys received out of the saloon business; but as to this no

dates are given, amounts stated, or any satisfactory evidence furnished, even though it could be held they had been partners in the saloon business.

In Pomeroy's Equity Jurisprudence, vol. 3 (3d ed.), at § 1040, after conceding such resulting trusts can be proven by parol, it is stated "that such evidence must be clear, strong, unequivocal, unmistakable, and must establish the fact of the payment by the alleged beneficiary beyond a doubt." This was not done in this case and counsel for appellant, appreciating the force of the authorities so holding, contend that this harsh rule laid down in so many cases has been greatly modified by the decisions of our court of appeals, and this court. While this contention may have some weight, yet we are of the opinion that the evidence fails to come within the rule laid down by our court of appeals, as well as former rulings by this court.

In the case of *First National Bank v. Campbell*, 2 Col. App. 280, concerning resulting trusts, it was stated "that the trust must result, if at all, at the instant the deed is taken, and the legal title vests in the grantee." In this case the evidence fails to show, except by inference, that any of the consideration was ever paid by the appellant, and there is no evidence as to amount, time or place.

In the case of *Marshall v. Fleming*, 11 Col. App. 516, as to the question of resulting trusts, it was held, "that the facts must be shown with clearness and certainty, but the certainty required is only such as is sufficient to satisfy the jury, or the court if a jury be waived, of the existence of the trust.   *   *   *  By clearness and certainty is meant, generally, that there must be sufficient positive facts shown to take the matter without the realm of conjecture and presumption."

In the case at bar we do not think the facts were

shown by clearness and certainty and it did not satis-fy the conscience of the chancellor, neither do we think it was sufficient to take the matter without the realm of conjecture and presumption.

In the case of *Doll v. Gifford,* 13 Col. App. 73, concerning the question of resulting trusts, it is stated:

"The presumption arising from the conveyance that it fully speaks the whole truth must prevail until the contrary is established beyond reasonable controversy."

In the case of *Whitsett v. Kershow et al.,* 4 Colo. 423, it is stated, and was approved in the case of *Nesmith v. Martin,* 32 Colo. 83, "that where it is sought as against a deed, absolute in terms, to estab-lish a trust by parol evidence alone, in order to take the case out of the statute of frauds, the contract must be established by clear, certain and conclusive proof, unequivocal in all its terms." •

In the case of *Lundy v. Hanson,* 16 Colo. 269, it was held, "when parol evidence is relied on for the purpose of establishing a resulting trust, the essential fact or facts must be sustained by clear, strong and convincing proofs."

And in the case of *McClure et al. v. La Plata County,* 19 Colo. 127, this court said:

"The rule is well established that to enforce a constructive or resulting trust the facts from which such trust is claimed to arise must be clearly alleged, and must be proved with clearness and certainty."

Tested by any of these rules, the evidence in this case is clearly insufficient to establish appellant's right to recover in this action; the findings of the dis-trict court are correct and the judgment is affirmed.

*Affirmed.*

CHIEF JUSTICE STEELE and Mr. JUSTICE GABBERT concur.