[No. 6302.]

### LEROY ET AL. v. NORTON.

Resulting Trust—Evidence—The evidence to establish a resulting trust in land must be clear, certain, satisfactory, and trustworthy—and, according to some authorities, conclusive. —(491)

Mere evidence of admissions of the party sought to be charged will not suffice.—(498)

The evidence examined and held sufficient to establish the trust.—(492-498)

*Appeal from El Paso District Court* — Hon. JAMES OWEN, Judge.

Messrs. VANATTA & DOLPH, Messrs. ORR & CUNNINGHAM and Mr. C. M. HAWKINS for appellants.

Messrs. MCKESSON & LITTLE and Mr. E. C. GLENN for appellee.

Mr. JUSTICE HILL delivered the opinion of the court:

This action was brought by the appellee May Norton against the appellants Ann Leroy and her husband, Frederick Leroy. Plaintiff prayed judgment, that she be decreed to be the owner of certain described land; that she be put in possession of it; that defendants be ordered to convey said premises to her; that she have judgment for its rents and profits and for general relief. The decree was in her favor, from which this appeal is prosecuted.

The ground on which this case was disposed of at the trial was, that the evidence established that the defendant Ann Leroy had the title of the land in controversy taken in her name, but in fact held it as trustee for the plaintiff, whose money was used in payment for it, and that on account thereof a resulting trust was created with the consent of the trustee and *cestui que trust*.

The only serious errors urged are that the evidence is insufficient to sustain the findings, and that it is insufficient in law and in fact to establish a resulting trust in favor of the plaintiff. There appears to be but little conflict between counsel, upon the law of the case. It is conceded that when real estate is purchased and a conveyance is taken in the name of one person, for the benefit of another, where the price paid is with the money of the other, the estate follows the consideration and inures to the party from whom that consideration comes. The evidence, to sustain a resulting trust, must be clear, certain, satisfactory, trustworthy, and some cases say conclusive; and if, as contended by counsel for appellants, the case must be made out with that fullness and precision which is essential to a conviction in a criminal case, beyond a reasonable doubt—we think, after a careful exam-

ination of the entire record, the evidence here is sufficient to satisfy this requirement.

The facts of the case disclose the unfortunate condition of a family, repeatedly divided within itself. The plaintiff (appellee) is the daughter of Ann Leroy, one of the defendants (appellants here), whose name was formerly Ann Cavanaugh. When a child the plaintiff came from the East with her father, mother, brother and one or two sisters, to Pueblo county, where the father and mother separated. The mother was awarded the custody of this daughter, and another girl, who thereafter became a Mrs. Nowak, whose ancestors appear to be a matter in dispute. She stated she is an adopted daughter of the defendant Ann Leroy, while Mrs. Leroy testified she is her own daughter.

About the year 1883 the mother took charge of a pesthouse for Pueblo county, and from that time until 1894 or thereafter, the two girls assisted her in conducting this institution. The evidence for the plaintiff is that at about the time the girls reached their majority they talked of leaving the place, but the mother urged them to stay a few years longer, promising them wages at $25 per month, and they testified that she was at that time securing this amount for their services. There is testimony that the mother received a salary of $50, $60 and $100 per month, at different times, in addition to what patients paid her for certain services, and that she was also allowed a certain amount for each patient. The evidence is conflicting upon some of these questions. She continued to conduct this house for about twelve years, and drew all moneys which were paid for services rendered by herself and the girls. After leaving the pesthouse the mother secured a ranch, where the plaintiff worked, the greater part of the

time for about two and one-half years, doing a large portion of a man's work in and about the ranch.

There is some contention as to the amount the mother saved from the moneys received from the county for conducting the pesthouse. Plaintiff and the other daughter or step-daughter, Mrs. Nowak, stated that she had $10,000 from that source at one time, and repeatedly advised them to that effect; also that plaintiff and Mrs. Nowak had in their possession $5,000 of this money at one time, during the panic of 1893, when they were changing the place of its deposit from one bank to another in Pueblo. The mother herself admits she had $4,000 at one time, that came from the county. To a certain extent, this evidence is immaterial, for the reason we think the record as a whole establishes that there was an understanding arrived at whereby it was agreed and understood between them that the plaintiff was entitled to and was to have $2,000 of this money for her services at the pesthouse, and thereafter on the ranch.

Thereafter, and during the year 1897, the mother and her daughter, Mrs. Norton, came to Colorado Springs for the purpose of buying the property in controversy, at which time it appears to have been understood between them that the place was being purchased for the daughter, with the $2,000 then in the possession of the mother, which money was coming from the mother to the daughter, and, at which time, the mother stated, to at least three people, in the presence of the daughter, that the place was being bought for the daughter, and with her money. When it was suggested, in that case that the deed be made direct to the daughter for the property, the mother gave, in substance, as the reason for having the property placed in her own name that the daughter had been at the pesthouse nearly all her life, hence was

inexperienced and did not know how to transact business.    After the purchase, it appears both the mother and daughter went to live upon this property and operated it, where the plaintiff remained most of the time until she was married in 1900; thereafter she was there at times, but was with her husband the most of the time until his death, which occurred in November, 1906, when the plaintiff again returned to the ranch with her two children, and continued to stay there the greater part of the time until she was ejected therefrom, about two weeks prior to the bringing of this suit.

From the time of the purchase of this ranch, the defendant Ann Leroy stayed upon it most of the time, but at times again conducted the pesthouse for Pueblo county; at which place she formed the acquaintance of her husband, Frederick Leroy, and on about the 16th of February, 1899, they were married, she being from twenty-five to thirty-three years his senior.    On the 2nd of March, 1899, being about two weeks after their marriage, the defendant Ann Leroy executed a warranty deed for this property to her husband, Frederick Leroy.    There was a reservation in the deed reserving to the grantor the free use, occupation, enjoyment and rents of the property for and during her natural life; the consideration paid was one dollar.    The plaintiff did not learn of the executing or recording of this deed until about August or September, 1906, which was some two or three months prior to the death of her husband.    After hearing a rumor to that effect, they investigated and ascertained the fact, at which time they protested concerning it; but it appears nothing further was done at that time, presumably on account of the death of her husband, and the further fact that she then returned to the ranch and continued to make it their home for at least a part of the time until ejected therefrom, when

it appears they had their last difficulty, and at which time she informed Mr. Leroy that she was going to stay on the land until they put her off.

Other evidence admitted without objection, which, if competent, shows that under a similar arrangement with Mrs. Nowak pertaining to her wages, the first ranch purchased and two lots in Pueblo were deeded to her by Mrs. Leroy in payment for her services at the pesthouse, or for moneys which it was recognized belonged to her for that purpose, kept by Mrs. Leroy; that thereafter Mrs. Leroy attempted, by suit, to recover this property, but was unsuccessful. We think the record as a whole establishes that Mr. Leroy had notice of the fact and circumstances of the plaintiff's equitable title to this property at the time he received his conveyance therefor; and, by any reasonable test where there is any conflict in the testimony, when the entire record is considered, we think it fully establishes sufficient facts by certain, clear, satisfactory, trustworthy and convincing evidence to sustain the findings of the trial court. Take, for instance, the discrepancy in the age of the plaintiff; according to the testimony of the mother, the plaintiff was not over four or five years of age when they went to the pesthouse; according to the testimony of the plaintiff, she was ten or twelve years of age; that was during the year 1883. If defendant was correct, in 1891 the plaintiff would have been twelve or thirteen years of age. A Mr. Orville Carroll, who had no interest in the result of this action, when called as a witness, testified, that during the years 1891, '92 and '93 he was in the grocery business in Pueblo; that the defendant Mrs. Leroy, then Mrs. Cavanaugh, was supposed to be running the pesthouse; that the daughter, May Norton, came to his place for groceries during those years; that at the time she began coming to his store in 1891 she was

then as large as she was at the time of the trial and was practically grown. This is in harmony with the testimony of Mrs. Norton, as well as Mrs. Nowak, who testified as to her age and as to an incident of celebrating her sixteenth birthday at the pesthouse, as to what the mother said, and other things that occurred on that occasion. At the trial, Mrs. Leroy testified that Mrs. Norton was then twenty-seven years of age; Mrs. Norton testified that she was at that time thirty-six years of age. The question of her age was very material as it fixed the time, when, by her alleged agreement, she was entitled to receive wages for services at the pesthouse. The trial court was aided in weighing this testimony by his observation of the witness, as to his judgment of her approximate age, from general appearances, etc., and there was nothing presented to overcome all this evidence, except the testimony of the mother, who, at that time, according to her own testimony, was of the age of sixty-nine years; while, according to the testimony of the plaintiff and Mrs. Nowak, she was then seventy-six years of age, and as shown by the record, with a memory very defective at that time pertaining to a great many things. This is but one illustration of many, which, if necessary, could be made in sustaining the findings of the trial court.

The contention of counsel that the record fails to disclose that any settlement was ever made or demanded by the plaintiff for the $2,000 alleged to have been hers, in our judgment, is not sustained by the record, which, we think, sustains the claim that an understanding was arrived at as to the amount which the plaintiff was entitled to. The fact that thereafter no demand was made for this money was for the very reason that it was agreed and understood between them that it would be invested in a ranch for the plaintiff, and that the same was thereafter in-

vested in this particular property. In case, after this, there had been a demand for the money, which the record does not show was made, it would have been contradictory to the contention of the plaintiff that the money was put into the ranch for her, and, instead of being evidence in her favor, it would have been against it and in favor of the defendants. We think the evidence fully sustains the findings that the defendant Frederick Leroy had been advised and understood the rights of the plaintiff in this property, and, if the court did accept with caution and look with suspicion upon the transfer of this property from Ann Leroy to her husband, Frederick Leroy, two weeks after their marriage, with practically no consideration therefor, when the marriage was shown to have taken place between a young man in the prime of life, and a woman between twenty-five and thirty-three years his senior, with a few years only to live, he was justified in so doing.

'Tis true, the evidence discloses that the Cavanaugh family were not congenial. This daughter and her mother repeatedly had trouble, but from time to time appeared to patch up their differences and go along as formerly. It is probable that it may have been upon account of one of these difficulties, aided by the influence of the husband, that the mother, in the heat of passion, may have executed this deed, in order to defeat the rights of the plaintiff and thereby give to the husband what belonged to the daughter. To a certain extent, this is demonstrated by the evidence, when, after learning of the deed to the husband, the plaintiff made protest concerning the same, and was advised by the mother that he had a deed to it and she guessed she couldn't do anything about it; but it is not necessary to arrive at a correct conclusion as to the circumstances under which this was done. It was necessary only as found by the trial

(32)

court that it was done with notice and without consideration.

The citation of authorities by counsel to the presumptions and relative duties existing between parent and child have no application to the facts here, nor the rule of evidence as claimed by them, which seems to be generally accepted that a resulting trust cannot be established upon the admission of the party alone. While the evidence includes the admissions of the defendant Ann Leroy, they are only cumulative proof of the facts shown to exist, by the testimony of the other witnesses; the weight of which was a matter for the trial court to determine. We find no error in this respect.

The judgment is affirmed.          *Affirmed.*

CHIEF JUSTICE CAMPBELL and Mr. JUSTICE GABBERT concur.