### Piggott *v.* Brown, Administrator, et al.

Decided February 8, 1926.

Action to have an interest in business property declared a resulting trust. Judgment for defendants.

### *Affirmed.*

1.  Trusts—*Evidence.* Evidence of mere verbal admissions in the nature of vague, general statements of persons since deceased, are insufficient to impress a trust on property in the absence of clear evidence that the trust funds were used in its purchase.

2.  Evidence—*Statements of Persons, Deceased.* Oral testimony of oral statements against interest, made by deceased persons many years before, is uniformly considered the weakest of all evidence.

3.  Corporations—*Stock—Ownership—Evidence.* In an action to impress upon property a resulting trust, the fact that the name of plaintiff appeared on the annual reports of the corporation as a director and president held, of slight, if any value, as proof that he was the owner of one-half the corporate stock,

4.  Trusts—*Funds—Guardian.* The law will not presume that a guardian betrayed the court or violated his oath or defrauded his ward by the unlawful use of trust funds.

5.  *Resulting Trusts—Requisites.* The underlying principle of a resulting trust is that the property or estate belongs to him whose money paid for it. No oral agreements or payments before or after the title is taken will create a resulting trust unless at the moment the title passes a trust results from the transaction itself.

6.  *Resulting Trust—Evidence.* Evidence to sustain a resulting trust must be strong, clear, certain, convincing, satisfactory, unequivocal, and conclusive.

    In the instant case, evidence reviewed and held not to establish a resulting trust.

*Error to the District Court of the City and County of Denver, Hon. Julian H. Moore, Judge.*

Mr. William H. Dickson, for plaintiff in error.

Mr. Lawrence Lewis, Mr. Bryan G. Johnson, Mr. Chester E. Smedley, Mr. F. J. Knauss, for defendants in error.

*Department Two.*

Mr. Justice Whitford delivered the opinion of the court.

This was a suit brought by Robert E. Piggott against E. W. Brown, as administrator to collect under the last will and testament of Bessie Piggott, deceased, and Blake A. Pitcher, Emma Louise Goudy and Jacob Schachet, as residuary legatees under said will, praying that a resulting trust be decreed in his favor to an undivided one-half interest in the business and corporate stock of the Denver Leather Company.

The plaintiff alleges, in substance, that Bessie Piggott died May 9, 1922, bequeathing to defendants Pitcher, Goudy and Schachet all of the corporate stock of the

Denver Leather Company, by her last will and testament; that the plaintiff was born October 26, 1882, and was not of age on April 17, 1903, when Bessie Piggott bought the bankrupt business afterwards known as the Denver Leather Company; that his father, Robert Piggott, died in 1898, leaving his mother, Eliza, and his sister Bessie and himself as the only surviving heirs; that his mother became his guardian and was the duly appointed administratrix of his father's estate; that on April 17, 1903, Bessie purchased, for herself and Robert, from the referee in bankruptcy, a leather business located at 1455 Larimer street, City and County of Denver, for $210, theretofore owned by E. R. Webster; that subsequently there was invested in goods for that business the additional sum of $3,000, one-half of which was furnished by Bessie and one-half by the plaintiff, from time to time, through his guardian, Eliza, but whether said sums so furnished by Eliza were a part of his minor estate inherited from his father he has no definite knowledge, although he is informed and believes it to have been advanced by his guardian out of such minor estate; that on November 30, 1903, Eliza made her final report as guardian and closed such minor estate and was discharged by the county court; that Bessie, immediately after the purchase of said leather business, assumed control until April, 1904, when plaintiff became connected with Bessie in the management thereof, until 1915; that on May 11, 1903, Bessie, Eliza and Robert Given, their attorney, caused to be incorporated the Denver Leather Company, with a capital of $3,000, divided into 300 shares of $10 each, and took over said leather business under the name of the Denver Leather Company; that because plaintiff was then a minor, certificate No. 1 was issued for 149 shares in the name of Bessie Piggott, certificate No. 2 was also issued for 149 shares in the name of Bessie Piggott, certificate No. 3 was issued to Robert Given, solely for the purpose of

qualifying him to act as director and president, and certificate No. 4 was issued to Eliza Piggott; that the four certificates were signed by Robert Given, president, and Bessie Piggott, as secretary; that none of the certificates were ever detached or removed from the stock certificate book during the life of Bessie; that certificate No. 1 for 149 shares and certificate No. 4 for one share were intended to be and were the property of the plaintiff, and were issued to Bessie Piggott and Eliza Piggott, and stood in their names in trust for the use and benefit of the plaintiff, and since May 11, 1903, he has been the owner and entitled to the possession thereof; that subsequently he became a director and president of the Denver Leather Company, as well as general manager; that on July 2, 1915, differences arose between Bessie and Robert concerning the conduct of the Denver Leather Company and other business affairs, and he severed his connection with the Denver Leather Company, leaving Bessie in charge of its affairs; that plaintiff never sold or disposed of his one-half interest in the Denver Leather Company, and that he continued to own said interest up to the time of the death of Bessie; that certificates of stock numbers 1 and 4 are the sole property of the plaintiff and never were the property of Bessie Piggott, and that she never had the right to dispose of the same by a last will and testament.

The answer consisted of denials of the allegations of the complaint upon which plaintiff sought to establish a resulting trust, and two affirmative pleas in bar of the action.

The trial to the court, resulted in a finding and judgment for the defendants, and to review that judgment the plaintiff comes here on error.

Plaintiff in error complains that the court erred in finding that the evidence was insufficient to establish a resulting trust, as alleged by him.

To prove the averments of his complaint the plaintiff produced many witnesses, who gave oral testimony of

oral statements alleged to have been made by Bessie against interest, with respect to the ownership of the property and the business of the Denver Leather Company. Some of these alleged declarations against interest were self-contradictory and inconsistent with plaintiff's contentions and the averments of his complaint. One witness testified that Bessie stated that "Bob was under age when his mother died, and that was why she (Bessie) had charge of things"; another testified that Bessie stated "that at the time of her mother's death the business was left in trust for herself and Robert"; still another testified that Bessie stated that "she and Robert owned the business equally"; another that Bessie said "that their mother started the business for the two children"; another that Bessie stated "that the mother took their joint money and invested it in the Denver Leather Company"; and still another testified that Bessie stated "that she (Bessie) had Bob's interest to take care of as well as her own." There was other testimony of the same import. It has been held that testimony of this character should be viewed with suspicion and scrutinized with the greatest care.

39 Cyc. 164, says: "As a general rule evidence of mere verbal admissions or statements of persons since dead, or of the alleged cestui que trust, or of mere loose expressions or admissions by the purchaser of property, such as that the purchase-money was furnished by another, or that he was purchasing or holding for another, particularly after the death of such purchaser, or a long lapse of time, and uncorroborated by other evidence, is insufficient to establish a resulting trust, as such evidence is most unsatisfactory, on account of the facility with which it may be fabricated, the impossibility of contradiction, and the consequences which the slightest mistake or failure of memory may produce."

Such vague, general statements are insufficient to impress a trust on property, in the absence of clear evidence

that the trust funds were used in the purchase of the property. Perry on Trusts, § 137; *Cuming v. Robins,* 39 N. J. Eq. 46. But to give this testimony its widest import, it falls short of establishing that the trust funds of the ward in the hands of his guardian was the identical money used for the purpose of purchasing a one-half interest in the Denver Leather Company. ·

We have held that "oral testimony of oral statements against interest, made by deceased persons many years before, is uniformly considered the weakest of all evidence." *Fagan v. Fisher,* 74 Colo. 473, 222 Pac. 647.

Much stress is laid by plaintiff upon a letter in evidence from Bessie to relatives in London, written immediately after the death of her mother in 1907, stating that "for the past five years my brother and I have been in the wholesale leather business. We have succeeded quite well and have an established leather business now." This is but a loose general expression, and, standing alone, is of but slight probative value, and unless corroborated by clear, unequivocal, trustworthy evidence, is insufficient to establish a resulting trust. 39 Cyc. 164; *Duval's Heirs v. P. & M. Bank,* 10 Ala. 636.

Plaintiff introduced in evidence some of the annual reports of the Denver Leather Company, filed in the office of the secretary of state, wherein plaintiff was designated as director, and in 1913 signed the annual report of the Denver Leather Company, as president. In other reports, defendant Goudy was designated as director and defendant Schachet appeared as vice-president. But none of these persons were ever in fact stockholders of the Denver Leather Company. Plaintiff avers in his complaint, and all the evidence is to the same effect, that the four original certificates of stock issued to Given, Eliza and Bessie Piggott, were never detached from the stock book, and the evidence is clear that the certificates of stock were never assigned or transferred to anyone, nor do the minutes of the corporation show the election

of plaintiff or either of the defendants to any corporate office. The evidence seems to indicate that this was a "one man" corporation, managed and controlled under the direction of Bessie Piggott, and that the name of the plaintiff, as well as the names of the two defendants, were designated as officers of the corporation in the annual reports, to give the outward appearance of a compliance with the requirements of the statute. In these circumstances, the appearance of the name of the plaintiff in these annual reports, as director and president, is of slight value, if any, as proof of ownership of one-half of the stock of the Denver Leather Company. There is testimony in the record that the plaintiff himself at one time disclaimed such ownership. After their differences and separation in 1915, Robert and Bessie did not speak, and assumed the attitude of utter strangers toward each other. On the day of Bessie's death, the plaintiff called on Chester Smedley, the attorney for the Denver Leather Company and Bessie, and inquired about her will and its provisions, and when asked by Smedley if he claimed any interest in the Denver Leather Company, he said in reply that he did not, that Bessie had used $3,000 received by her from her father's estate to purchase the Denver Leather Company, and that while it was a corporation, Bessie had always run it as though it was her individual property.

The Denver Leather Company was organized in April, 1903. The plaintiff was employed by the company as errand boy, and salesman, in August, 1903, and became of age two months thereafter, on October 26, 1903.· On November 30th of the same year the plaintiff received from his mother, as his guardian, his distributive share of his father's estate; Bessie received her share, $2,984, in 1900, and Eliza Piggott received a like amount as guardian for Robert, and as widow she received $5,868 as her individual share. The final report of Eliza, as guardian of plaintiff, filed by her in the county court,

contained the following statement of the plaintiff, endorsed on the report: "I, Robert Piggott, late ward of Eliza Piggott, the within named guardian, have examined the foregoing report and find the same correct, and ask that the guardian be discharged. Denver, Colo., Nov. 30, 1903. Robert Piggott." There is no record or entry in the guardianship proceeding that there was any application for authorization to invest the ward's money in the Denver Leather Company, nor is there any reference to any such investment, or in the final report of Eliza Piggott as guardian. There appears in the same record of the court the following receipt, signed by the plaintiff: "Denver, Colo., Nov. 30, 1903. Received of Eliza Piggott my late guardian the sum of three thousand, two hundred and four and 92/100 dollars, in full payment of my share of the estate of Robert Piggott, deceased. Robert Piggott." The law will not presume that the guardian betrayed the court, or violated her oath or defrauded her ward, by the unlawful use of the trust funds.

There is no direct evidence in the record that Eliza Piggott paid or advanced any money out of her ward's estate, or of her own money on his behalf, which went into or became a part of the purchase price of the bankrupt store, or was used in organizing or starting the Denver Leather Company. The minutes of the organization meeting of the Denver Leather Company tend to show that Bessie was the sole purchaser and owner of the capital stock of the company. The minutes of the organization meeting of the Denver Leather Company, held on May 11, 1903, recite: "On motion of Eliza Piggott, the proposition of Bessie Piggott, in exchange for the capital stock of the company, to sell to the company the stock of goods, fixtures, furniture and book accounts now belonging to her in the store known as 1455 Larimer street, Denver, Colorado, and to pay into the treasury of the company the sum of $1,790, was accepted. The president and secretary were authorized to issue to said

Bessie Piggott the full capital stock of the company, except two shares, in payment for said stock of goods, furniture and book accounts, with the sum of $1,790 in cash.''

The underlying principle of a resulting trust is that the property or estate is held to belong to him whose money paid for it. ''No oral agreements and no payments, before or after the title is taken, will create a resulting trust, unless the transaction is such at the moment the title passes that a trust will result from the transaction itself. * * * The money used must be demonstrated to have been the money of the party claiming the title. It must have been his at the very time of the purchase, and must have been used for that express object. Its identity must be traceable.'' *First Nat. Bank v.Campbell,* 2 Colo. App. 271, 280, 30 Pac. 357; *Freeman v. Peterson,* 45 Colo. 102, 100 Pac. 600; 1 Perry on Trusts, Sec. 133; *Gibson v. Foote,* 40 Miss. 788; *Tunnard v. Littell,* 23 N. J. Eq. 264.

In the case at bar the evidence fails to show, except from hearsay statements, that the money of the plaintiff in the hands of his guardian, ever went into the Denver Leather Company, and there is no evidence as to amount, time or place, or by whom or to whom paid. The burden of establishing the truth of the averments claiming the existence of a resulting trust rested upon the plaintiff. The law, as announced by this court, demands a high degree of proof to establish a resulting trust by parol testimony. This court has repeatedly held that the evidence to sustain a resulting trust must be strong, clear, certain, convincing, satisfactory, unequivocal and conclusive, and, some authorities say, beyond a reasonable doubt. *Irvine v. Minshull,* 60 Colo. 112, 152 Pac. 1150; *Leroy v. Norton,* 49 Colo. 490, 113 Pac. 529; *Mullen v. McKim,* 22 Colo. 468, 45 Pac. 416; *Freeman v. Peterson, supra; Whitsett v. Kershow,* 4 Colo. 419; *Deaner v. O'Hara,* 36 Colo. 476, 85 Pac. 1123.

After a careful reading of the record, we are of the opinion that the evidence is insufficient to establish a resulting trust. We cannot hold that the evidence in this case is clear, certain, unequivocal, satisfactory, unclouded and conclusive, as the rule requires it must be in order to establish a resulting trust. But assuming that the evidence of the plaintiff was sufficient to make a prima facie case, there exists a serious conflict in the evidence, and the trial court saw and heard the witnesses, passed upon their credibility and the weight to be given to the testimony of each witness, and its findings of fact cannot be disturbed on this review.

The judgment must therefore be affirmed.

MR. CHIEF JUSTICE ALLEN and MR. JUSTICE DENISON concur.