[No. 3551. April 15, 1931.]

[Rehearing Denied June 18, 1931.]

WHITE et al. v. MAYO et al.

[299 Pac. 1069.]

L. S. Wilson, of Raton, for appellants.

J. Leahy, of Raton, for appellees.

## OPINION OF THE COURT

HUDSPETH, J.

The former appeal of this cause is reported as White et al. v. Mayo et al. in 31 N. M. 366, 246 P. 910, where the second amended complaint was held to state a cause of action. The allegations of the second amended complaint are fully set out in the former opinion. After the case had been remanded, Miles E. Hopkins, who purchased the land in San Juan county from John E. Mayo after lis pendens had been filed in the office of the county clerk of said county, was permitted to intervene.

The issues upon which the trial was had were made by the second amended complaint, the first amended answer thereto and a reply, petition in intervention and answer

thereto. The court rendered judgment in favor of the plaintiffs and against the defendant Lillie J. Clement for $1,844.61 and directed that certain moneys of the estate impounded in the hands of the clerk of the court be paid thereon and judgment in rem upon the land situate in San Juan county, described in the second amended complaint, against John E. Mayo and Miles E. Hopkins for the balance, after applying the funds impounded on the judgment, dismissed as to defendant Griggs. The defendants Lillie J. Clement and John E. Mayo and intervener Hopkins appealed.

Both plaintiffs and defendants submitted findings of fact and conclusions of law; all findings of fact as well as conclusions of law submitted by counsel for plaintiffs were approved and adopted by the court.

The court found that Henry C. White in the year 1891 made a homestead entry under the public land laws of the United States on 160 acres of land situate in Colfax county, N. M., and made improvements thereon of the value of $300, and died intestate in 1892 or 1893 leaving as his heirs the plaintiffs, Lillie George, a daughter, who was born April 17, 1875, and Marion White, a son, born February 24, 1886, and Kosiah L. White, his widow; that the widow made final proof on said homestead, as his widow, and obtained patent thereto. Parts of the findings of fact follow:

"The court also finds that said Henry C. White, at the time of his death left besides the improvements on said land, other personal property consisting of two yoke of oxen, two wagons, one cow, chickens, household and kitchen furniture, etc., and that said other personal property was of the value of $300.00 and that all of said other personal property so left, was the Community property of said Henry C. White and Kosiah L. White.

"That the total value of said property at the time of the death of Henry C. White was $800.00 and that his widow Kosiah L. White appropriated the same and disposed of it without any legal procedure had thereon.

"That said Kosiah L. White was married to said Wm. H. Mayo in June 1895, and that at the time thereof, or very soon thereafter, she had $600.00 which she obtained from the sale of the personal property which belonged to her and said Henry C. White, at the time of his death, and that the same was at that time community property, and that she gave this money to William H.

Mayo to be invested by him for the benefit of herself and plaintiffs, and that at the time of so doing, the plaintiffs were minors.

"That said Wm. H. Mayo, sometime in November 1896, acting under authority of his then wife, Kosiah L. Mayo, bought from Bart Nauta, a contract that he had with the Maxwell Land Grant Co., for 80 acres of land described in the second amended complaint, and that he agreed to pay said Nauta the sum of $500 for his equity in said land and to pay the Maxwell Land Grant Co., the sum of $320 for said land, with interest on the deferred payments to said Land Grant Co., and that said William H. Mayo and wife began their farming operations upon the said Nauta land and used the money so received from the Henry C. White property in their investment in land and farming operations, and made the payments to the Maxwell Land Grant Company annually until they completed the payments therefor in the year 1905.

"That in the year 1898, the said Kosiah L. Mayo and Wm. H. Mayo executed a deed to one Wm. K. Irwin, the record of which deed is one of plaintiffs' exhibits herein, conveying to said Irwin the Henry C. White homestead, heretofore described; and that theretofore they had sold said homestead to said Irwin, together with the improvements put thereon by said Henry C. White, for the sum of $500.00, and that $300 thereof were paid for said improvements which were moved from said land before said deed was given; and that said Kosiah L. Mayo and Wm. H. Mayo at the time of making of said deed, and in order to satisfy the said Irwin and conclude this sale with him procured the signatures of plaintiffs herein to said deed by verbally promising them that the said $800.00, the total received from the White property, would be invested for the benefit of plaintiffs and their mother, and that said Kosiah L. Mayo and Wm. H. Mayo then and there verbally promised plaintiffs to allow to, and invest and protect for, plaintiffs their interest in the proceeds of the property of Henry C. White, the same as though Henry C. White had died seized of title to said homestead land; and said Wm. H. Mayo and Kosiah Mayo did so invest said moneys.

"That said Kosiah L. Mayo and Wm. H. Mayo invested with the said $600.00 so received from the sale of the Henry C. White personal property and the said $200.00 received from said Irwin for said homestead, and also that very soon thereafter Wm. H. Mayo added to their investments an additional $300.00 of his separate property, making a total sum of $1100.00 which they kept investing and reinvesting in the buying and selling of real and personal properties, until in the month of August, 1920, when they ceased operations with the said $1100.00, and that by said investments and reinvestments, they had accumulated the sum of $5210.52 in August, 1920, and which was invested as follows: * * *

"The the total amount received by the sale of the property left by Henry C. White at the time of his death, including the homestead entry for which patent was later issued to Kosiah L. Mayo, was the sum of $800.00. Of this sum, $600.00 was the proceeds of the personal property, in which plaintiffs had a ⅜ interest; and upon the sale of the homestead, so patented to Kosiah L. Mayo, the said William H. Mayo and Kosiah L. Mayo recognized

that the plaintiffs had an interest in the proceeds of said land as the heirs of said Henry C. White, and promised and agreed to set apart to, and hold and invest for, plaintiffs an interest in the proceeds of said land equal to that which would have been theirs had said Henry C. White died seized of said land; and that the total amount of money so invested by William H. Mayo and Kosiah L. Mayo as the proceeds of the property of Henry C. White and his wife Kosiah, was the sum of $800.00, in which, by virtue of operation of law, and by virtue of the verbal promises and agreements and recognition of the said William H. Mayo and Kosiah L. Mayo, the plaintiffs had a three-eights undivided interest; and that of the total investment of $1100.00, the plaintiffs had a three-elevenths interest therein, and that said investment, by earnings and accumulations, amounted, in August, 1920, to the sum of $5210.52, a part of which was evidenced by promissory note bearing interest.

"That at the time the said Kosiah L. Mayo and Wm. H. Mayo first invested the said $800.00 so obtained from the sale of the said personal property left by said Henry C. White, they did so without consulting plaintiffs as to said investment, and that plaintiffs were then under the age of twenty-one years."

"That at all times between said years 1898 to 1922 the said investments and all of them so made by said Mayos with the interest of plaintiffs in said money so obtained from the sale of the Henry C. White property was by the mutual consent of the plaintiffs and said Mayos, kept and invested by said Mayos as a trust for the benefit of plaintiffs. * * *"

Appellant maintains that the appellees have failed to show any interest in the proceeds of the Henry C. White property. It is well settled that where the widow makes final proof and receives patent to a homestead entered by her deceased husband, the heirs have no interest therein. It was so held in the case of McCune v. Essig et ux., 122 F. 588, 590, 59 C. C. A. 429, affirmed 199 U. S. 382, 26 S. Ct. 78, 50 L. Ed. 237. The Circuit Court quoted from Wilcox v. McConnel, 13 Pet. 517, 10 L. Ed. 264, as follows:

"We hold the true principle to be this: that whenever the question in any court, state or federal, is whether a title to land which had once been the property of the United States has passed, that question must be resolved by the laws of the United States; but that whenever, according to those laws, the title shall have passed, then that property, like all other property in the state, is subject to the state legislation, so far as that legislation is consistent with the admission that the title passed and vested according to the laws of the United States."

And said:

"The statute expressly authorizes the issuance of the patent to the widow of the deceased homestead settler. It makes no pro-

vision for the children of such settler, and in its terms contains no recognition of any right initiated by him. The question presented is whether or not the widow was a donee in her own right of the land from the United States. If she were such donee, the statutes of the State of Washington were powerless to divest her of her interest or to charge with a trust the title so patented to her."

The Department of the Interior so construed the statute, shortly after the issuance of the patent to Kosiah L. White, in the case of Steberg v. Hanelt, 26 L. D. 436, where it was held that the widow was vested with full power to complete the entry for her own benefit, or relinquish the same.

In Keys v. Keys, 28 L. D. 6, Secretary Bliss said:

"It appears that, under a mistaken idea of her right to the land, she agreed to divide it with the children of her deceased husband. It cannot be held that such a contract would be binding upon her, in the absence of something in the nature of an estoppel. * * *"

■ There is no substantial evidence in the record of the removal of the improvements from the homestead, but it is immaterial since appellees had no interest therein. Patterson v. Chaney, 24 N. M. 156, 173 P. 859, 6 A. L. R. 90. The distribution of the personal property was governed by chapter 90, Laws 1889. Section 21 of that act precedes the section (154-301, 1929 Comp.) authorizing an allowance for maintenance of widow and children when necessary, discussed in our former opinion in this case, and contains a provision as follows:

"When the decedent leaves a widow, all personal property which in his hands as the head. of a family would be exempt from execution, after being inventoried and appraised, shall be set apart to her as her property in her own right, and shall be exempt in her hands as in the hands of the decedent." 1929 Comp. § 38-107.

The exemption law in force at that time was chapter 37, Laws 1887. Under these statutes the widow was entitled to all of the personal property listed in the findings of the court, except one yoke of oxen and one wagon. Mahoney v. Nevins, 190 Mo. 360, 88 S. W. 731; Sammons v. Higbie's Estate, 103 Minn. 448, 115 N. W. 265; section 86, Woerner, Am. Law of Admin. (3rd Ed.) The only evidence in the record as to the value of this personal

property is the testimony of the appellee Lillie George, who, after stating that she did not know the value, said that she thought a yoke of oxen was worth thirty or forty dollars a yoke, and the wagons forty dollars each, or "maybe more". There is no evidence in the record as to the amount received by the widow for the personal property. The appellee Lillie George testified:

"A. I don't know how, nor when, nor what she got for it."

Appellees claim title by inheritance. They were entitled to three-fourths of their father's half, or three-eighths of the whole of the residue of the personal property after the widow's exemption was set apart and the debts of the decedent and the community paid. There is no evidence to support the allegation that there were no debts. The widow could have used the proceeds of the sale of the yoke of oxen and the wagon to discharge the funeral expenses and the expenses of the last illness of the deceased. Merrill v. Comstock, 154 Wis. 434, 143 N. W. 313. There is no substantial evidence that Kosiah had the proceeds of the sale of this yoke of steers and wagon after two or three years of widowhood at the time of her marriage to W. H. Mayo, or that she turned appellees' share of the proceeds, if she did have it, over to Mayo with which to purchase the Nauta land. A son of the vendor Nauta and his brother-in-law, Pifer, testified that William H. Mayo stated that his wife's money was used to buy the Nauta land, title to which was taken in his name. G. T. George, the husband of appellee Lillie George, testified to like statements. The appellee Lillie George, after testifying that she thought W. H. Mayo claimed that the money used in making the first payment, which she believed was $300, on the Nauta place belonged to her mother Kosiah, in answer to a question as to whether or not it was the proceeds of the personal property left by her father, answered:

"It undoubtedly must have been, otherwise I don't know where she got the money."

Appellant contends that the evidence was insufficient to support either the court's findings of fact in favor of the appellees or the decree.

The burden of proof on the whole case rests on the one who seeks to establish a trust. Perry on Trusts, § 139.

It is a well-established doctrine that a high degree of proof is required to establish a trust by parol evidence. Many cases hold that the evidence must leave no reasonable doubt of the payment by the alleged cestui que trust or of other facts relied upon to establish the trust. The cases on this point are collected in the annotation 23 A. L. R. 1500.

"And oral testimony of vague, general, oral statements against interest made by a deceased person is insufficient to support a resulting trust and declarations or verbal admissions of the grantee are always received with caution. The facts in all cases must be proved with great clearness and certainty, especially when the claim depends upon mere statements; and facts that only base a conjecture that the conditions of a resulting trust existed, are insufficient." Perry on Trusts, § 137.

In the case of Stelling v. Stelling et al., 323 Ill. 122, 153 N. E. 718, 720, it was held:

"A person seeking to establish a resulting trust must show clearly and without question that his money paid all, or some definite proportion, of the purchase price of a definite tract of land, the title of which was taken in another."

In the case of Morford v. Stephens (Mo. Sup.) 178 S. W. 441, the court said:

"The law governing the character and quantum of evidence to show a resulting trust or other implied trust is well settled. The burden of proving such trust is cast upon the party claiming against the deed, and the evidence for that purpose must be so clear, convincing, and complete as to leave no doubt in a reasonable mind that it was the intention of the parties to the transaction that a resulting trust should be created."

The rule stated in 39 Cyc. 164 follows:

"As a general rule, evidence of mere verbal admissions or statements of persons since dead, or of the alleged cestui que trust, or of mere loose expressions or admissions by the purchaser of property, such as that the purchase money was furnished by another, or that he was purchasing or holding for another, particularly after the death of such purchaser or a long lapse of time, and uncorroborated by other evidence, is insufficient to establish a resulting trust, as such evidence is most unsatisfactory, on account of the facility with which it may be fabricated, the impossibility of contradiction, and the consequences which the slightest mistake or failure of memory may produce. But, if such admissions or declarations are plain and consistent, and especially if they are corroborated by evidence of other circum-

stances, as where a statement that a purchase is made for another is corroborated by proof that the purchase money was paid by such other, or by proof of a prior agreement to so purchase, they may be sufficient to establish a resulting trust."

To like effect are Hayden v. Dannenberg, 42 Okl. 776, 143 P. 859, Ann. Cas. 1916D, 1191; Piggott v. Brown, 79 Colo. 11, 243 P. 626; Cuming v. Robins, 39 N. J. Eq. 46; Orear v. Farmers' State Bank, 286 Ill. 454, 122 N. E. 63, 68; Akin v. Akin, 276 Ill. 447, 114 N. E. 908; Baughman v. Baughman et al., 283 Ill. 55, 119 N. E. 49, Ann. Cas. 1918E, 895; Streeter v. Gamble, 298 Ill. 332, 131 N. E. 589, 23 A. L. R. 1485; Marrable v. Hamilton, 169 Ark. 1079, 277 S. W. 876; Babcock v. Collison, 73 Okl. 232, 175 P. 762; Bullerdick v. Miller, 85 Ind. App. 369, 152 N. E. 280; Fowler v. Fowler, 205 Ala. 515, 88 So. 648; Jones on Evidence, vol. 3, par. 422.

Appellees' brief states:

"The first talk between appellees and their mother and step-father concerning their interest in the fund obtained from the sale of property left by their father, was in the year 1898, when Kosiah and William H. Mayo obtained the signatures of appellees to the Irwin deed."

The appellee Marion White testified as to this conversation as follows:

"Q. Did they tell you why they wanted you to sign? A. They said 'We will give you a portion of this sometime'."

And appellee Lillie George testified:

"Q. Why did you sign, for any other reason than that your husband asked you? A. They told me that they would settle with me later.

"Q. Who was that? A. Mr. Mayo and my mother.

"Q. Settle for what? A. For my interest in the estate.

"Q. Did they say how much? A. No.

"Q. Did they ever say what interest you and your brother Marion White had? A. No, they did not."

The court refused to find that G. T. George, the husband of appellee Lillie George, was the agent of appellees. G. T. George testified that

"Mr. and Mrs. Mayo both said that they would have their half interest, Marion White and my wife,"

and on another occasion Mr. Mayo said to the witness,

"That he had given his children all that he had ever expected to give them, and 'this property has all been accumulated through Mrs. Mayo, your wife's and Marion's interest, and I want them to have it all'."

The evidence is insufficient to support the theory of a gift to appellees. Ross v. Berry, 17 N. M. 48, 124 P. 342, 28 C. J. 629.

In the case of Orear v. Farmers' State Bank & Trust Co., supra, it is said:

"It is not enough to show that the debtor owed the creditor and that he afterwards bought land for an amount equal to the indebtedness. It is essential to prove a resulting trust that the claimant shall be able to prove and identify the specific fund or property invested and the specific property in which it has been invested.

" 'He must be able to trace and identify the fund from its origin to the final investment. The fact that the fund may be money does not relieve him from this necessity. * * * It is not necessary to trace the particular coins or bills, but the fund must be capable of identification as a fund distinguishable from all other money or the right to pursue it must fail.' Moore v. Taylor, 251 Ill. 468, 96 N. E. 229.

"Where the evidence is doubtful and not entirely clear and satisfactory, or is capable of reasonable explanation upon a theory other than that of the existence of an implied or resulting trust, such trust will not be held to be sufficiently established to entitle the beneficiary to a decree declaring and enforcing it."

Mrs. Mayo purchased 20 acres adjoining the Nauta land after the delivery of the deed to the White homestead and took title in her own name. The court found that W. H. Mayo was sober, industrious, and capable, and appellees' witnesses testified that he raised fair crops for two years previous to the purchase of the Nauta land on 60 or more acres of irrigated land, and that he had horses and farming implements. He occupied and enjoyed this estate through all the years, and in 1920, with the knowledge of appellees, disposed of his personal property preparatory to his departure for Missouri, contracted to sell his 320 acres of land to G. T. George, the husband of appellee Lillie George, placed a deed therefor in escrow where it remained for more than a year, during which time said George repeatedly asked for and obtained ex-

tensions of time within which to pay the purchase price, loaned more than $2,000 to said George before his departure for Missouri in 1920 on which some $800 was paid, and there is no evidence of any claim of trust until after this note had been placed in the hands of an attorney for collection and suit by W. H. Mayo, and after the death of the said Mayo, except the testimony of appellees and the said G. T. George.

Appellees' claim finds no support in the surrounding circumstances and the subsequent conduct of the parties. Parol evidence to establish an implied trust should be clear and unequivocal and such as goes distinctly to prove the facts necessary to create a trust, and where only part of the purchase money is claimed the evidence must show the exact portion of the entire price paid. Appellees' evidence fails to meet these requirements.

There being no substantial evidence to warrant the court's findings or the decree entered thereon, the judgment of the trial court is reversed, and the cause remanded with instructions to dismiss the complaint, and it is so ordered.

WATSON and SADLER, JJ., concur.
BICKLEY, C. J., and PARKER, J., did not participate.