**204 P.2d 440**

### KOPRIAN v. MENNECKE et al.

No. 5142.

Supreme Court of New Mexico.

March 24, 1949.

Frazier, Quantius & Cusack and Richard G. Bean, all of Roswell, for appellant.

G. T. Watts, of Roswell, for appellees.

SADLER, Justice.

The plaintiff below, as the appellant here, asks us to review a judgment rendered against him by the district court of Chaves County in a suit wherein he sought to hold his mother liable as a trustee for an accounting and for the gains on an interest in a business allegedly received by her to his use and benefit at the time his father was divorced by the mother forty-five years prior to institution of the suit. Louis Mennecke, the step-father, to whom the mother was married about ten years after the divorce, was joined as a defendant on the theory that the property allegedly received in trust plus gains thereon had become commingled with property in the joint ownership of his mother and step-father.

The defendant, Christina Mennecke, whose marriage to the plaintiff's father, Joseph Koprian, took place in St. Louis, Missouri, in 1893, conducted a small dry goods store in that city for almost fifteen years beginning in 1896 before coming to New Mexico to reside upon her marriage to Louis Mennecke in 1912. It is the plaintiff's claim that his father was a part owner of this store and that upon sale thereof his interest was received by the mother in trust for the son's use and benefit. The mother stoutly denied that the father of plaintiff ever invested any money in the business or had the slightest interest there-

in. Accordingly, the defenses interposed were a denial that any trust ever existed, limitations, laches and a written release duly executed by plaintiff of all claims against his mother. With this brief statement of the controversy, a clearer understanding may be had of the trial court's findings and conclusions to follow. They read:

"I. That the defendant, Christina Mennecke, and Joe Koprian, were husband and wife and were divorced in St. Louis, Missouri in 1903, and that the defendant was awarded the care, custody and control of the plaintiff, who was then a minor.

"II. That at the time of the divorce between the said Christina Mennecke and Joe Koprian, aforesaid, there was no community property owned by the parties and that all of the property in the hands of the parties, or either of them, was a small store located in St. Louis, Missouri, which was acquired by Christina Mennecke from moneys borrowed by her, on her sole and individual credit, from her sister, father and brother, and from funds inherited by her.

"III. That in 1936 the plaintiff ceased to make his home with his mother and more than four years prior to the commencement of this action he had knowledge that his mother disclaimed any indebtedness in favor of the plaintiff and refused to make

any settlement claimed by him to be due him or to meet any of his demands for settlement.

"IV. That in the year 1944, after the plaintiff had made demands upon his mother for settlement, and at a time when he had knowledge regarding his claim to any property allegedly owned by his father, he signed a full and complete release to his mother, the defendant Christina Mennecke, and that he knew, or should have known, the terms of said release.

"V. That the defendant, Christina Mennecke, never at any time had any estate belonging to Joe Koprian, or held any estate in trust for the plaintiff, Joe Koprian, either constructive or resulting.

"VI. That the plaintiff has failed to establish proof of such a trust, either constructive or resulting.

"Conclusions of Law.

"1. That all property owned by Christina Mennecke, or held by her at the time of her divorce from Joe Koprian, consisting of the store in St. Louis, Missouri, and all cash on hand at that time, was her sole and separate estate.

"2. That the plaintiff did, on April 19, 1944, make, execute and deliver to the defendant, Christina Mennecke, a full and complete release of any and all claims of all and every character which he then had against the said Christine Mennecke and

arising from the beginning of time to the date of the execution of said release.

"3. That any claim which plaintiff might have had against the defendants, or either of them, is barred by Limitations as such action, if any he ever had, accrued more than four years prior to the commencement of his action.

"4. That any action which plaintiff had, if any he ever had, is barred by the plaintiff's guilt of laches in that he has lawfully permitted such time to elapse that it is difficult, if not impossible, for the defendants, or either of them, because of the lapse of such period to either prove or disprove the facts surrounding the alleged trust. That the plaintiff has wholly and totally failed to carry the burden of proof in this action required of him by law.

"5. That the plaintiff is not entitled to an accounting from the defendants, or either of them, and that the defendants, and each of them, are entitled to recover their costs herein expended.

"6. That any findings of facts and conclusions of law requested by either the plaintiff or the defendants not consistent with the findings of facts and conclusions of law herein made are hereby denied.

"Let judgment be entered accordingly."

Judgment was entered as directed in the trial court's decision and this appeal is brought to review it and secure a new

trial. Counsel for the plaintiff argue their case under the single point that the trial court erred in dismissing the complaint because (a) the trust was established; (b) the release does not bind plaintiff, and (c) neither limitations nor laches bar him.

Thus it is that in order to secure a reversal counsel must satisfy us that the trial court erred in every particular charged. This is so because the defendants interposed a pyramid of defenses, any one of which, if good, is sufficient to support the judgment rendered. Since the first challenge to the judgment, namely, that the evidence establishes a trust in plaintiff's favor which entitles him to an accounting, goes directly to the merits of the case, we shall first consider it. If not well taken, there is no need to consider others.

We begin our study of the question, mindful of two controlling considerations. First, findings of fact by the trial court with substantial support in the evidence will not be disturbed on appeal. The rule is so fundamental and invariable that we are spared the necessity of citing authority to support it. Next, a high degree of proof is required to establish a trust by parol evidence. White v. Mayo, 35 N.M. 430, 299 P. 1068, 1069. When the evidence produced at the trial on the issue is viewed in the light of these two rules, we have no hesitancy in announcing the trial court's finding, that the plaintiff's mother "never at any time had any estate belonging to Joe Koprian or held any estate in trust" for him, is invulnerable to attack. It would serve no useful purpose to undertake an extensive recapitulation of the evidence. We have examined it with minute care and in no sense does it attain the high degree of proof required in cases of this kind. Plaintiff's counsel frankly concede that, if this finding can be sustained, the judgment must be affirmed.

The gist of the evidence relied upon by plaintiff to establish the trust was a purported statement to him by his mother, on receiving news of his father's death in 1912, that it was a good thing she took everything away from him at time of the divorce, "or you (the son) would be out in the weather, too, as you have some inheritance coming." The mother took the stand to deny, categorically, that she ever made such a statement. At one point, she did admit having said to him, when he approached her in a drunken condition a few years previously asking for a settlement, after inquiring of him "what kind of settlement," that she had given him all that "was coming to him." But she touched on this matter, in rebuttal, by denying that the father's estate was even mentioned at the time; saying on the occasion mentioned her son was drunk and abusive toward both her and her husband, and that conditions were such at the time, several years having elapsed since, that she could not now even remember just what she did say to plaintiff.

On the other hand, the plaintiff's mother testified positively, as did her husband and codefendant who lived in the same block she did in St. Louis as a close neighbor much of this time, that she borrowed from her sister and brother the money with which she made a small beginning in the business out of which an interest in the son's favor, through ownership of a share by his father, was said to arise. She further testified the business was conducted in her name over the years, a fact affirmed by several of plaintiff's own witnesses whose testimony was taken by deposition at St. Louis.

It was the function of the trial judge, as the fact-finder, to resolve the issue of the claimed trust and otherwise appraise the testimony of the witnesses. Bubany v. New York Life Ins. Co., 39 N.M. 560, 51 P.2d 864. In view of the high degree of proof required to establish a trust by parol evidence, White v. Mayo, supra, we certainly are in no position to say he erred in drawing the inferences he did. When we view the evidence in the most favorable light permissible from plaintiff's standpoint, it is difficult to see how the trial judge could have found the facts otherwise.

■ The "Married Women's Act," creating the wife a femme sole for the purpose of engaging in business, was adopted in Missouri in 1889 as Section 6864 of Mo. Rev.St., 1889. See Mo.Rev.St.1929, § 2998, Mo.R.S.A. § 3385. Under the terms of this statute it was permissible for the wife to engage in business and such business and the gains thereof constituted her separate property in which the husband had no interest. Accordingly, the business in St. Louis, being the separate property of plaintiff's mother in which his father had no interest, the proceeds of the sale of that business would retain the same character. The transfer of such proceeds to New Mexico and its investment here would give the plaintiff no claim on any part of it on the trust theory advanced.

The conclusion reached renders it unnecessary to consider other grounds for reversal argued by plaintiff's counsel. If there was no trust, there were no rights in a trust to be released by plaintiff, nor any cause of action to be barred by limitations or laches.

Finding no error, the judgment reviewed will be affirmed and

It Is So Ordered.

BRICE, C. J., and LUJAN and COMPTON, JJ., concur.

McGHEE, J., did not participate.