**Certiorari Granted, May 1, 2014, No. 34,554**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2014-NMCA-053**

**Filing Date: December 10, 2013**

**Docket No. 31,463**

**GEORGE ROBERT MILLER,**
**BARBARA JEAN MILLER, and**
**CHARLES RICHARD MILLER,**

**Plaintiffs-Appellants/Cross-Appellees,**

**v.**

**BANK OF AMERICA, N.A.,**
**As Trustee of the Qualified Terminable**
**Interest Marital Trust and Family Trust**
**created under the Last Will and Testament**
**of Rudolph C. Miller, Jr., Deceased,**

**Defendant-Appellee/Cross-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Beatrice Brickhouse, District Judge**

Catron, Catron, Pottow, & Glassman P.A.
Michael T. Pottow
Santa Fe, NM

Tucker Law Firm, P.C.
Steven L. Tucker
Santa Fe, NM

for Appellants

Keleher & McLeod, P.A.
Thomas C. Bird
Phil Krehbiel
Cassandra R. Malone
Albuquerque, NM

for Appellee

**OPINION**

**GARCIA, Judge.**

**{1}**      Three of the remainder beneficiaries (Beneficiaries) of their father's two testamentary trusts appeal a judgment awarding them damages in an amount lower than they claimed that the trust Beneficiaries were entitled to recover.  The trustee, Bank of America (the Bank), cross-appeals.  The Bank's cross-appeal challenges the court's determination of liability.  We deny the Bank's cross-appeal but we partially agree with Beneficiaries regarding the calculation of certain compensatory damages.  As a result, we affirm in part and reverse in part.

**BACKGROUND**

**{2}**      This dispute concerns two trusts created by the Last Will and Testament of Rudolph C. Miller, Jr. (the Will).  The two trusts created by the Will were a qualified terminable interest property marital trust for Father's widow and a remainder trust for Beneficiaries (the Trusts).  The central purposes of the Trusts were:  (1) the generation of income for beneficiary distribution, and (2) the preservation of the value of the principal assets for distribution to Beneficiaries upon the surviving spouse's (Ann's) death.  In 1985, the Bank assumed the position of trustee of the Trusts.  It administered the trusts until their termination on January 30, 2004.

**{3}**      The original lawsuit and this appeal arise from the Bank's actions as trustee from the end of 1991 through 2003.  As of 1991, the net value of the Trusts was $669,996.07 and primarily consisted of real property in Virginia, Hawaii, and New Mexico.  At the end of 2003, the Trusts consisted of one "ratty piece of property," and the net value of the Trusts was effectively zero.  As a result, Beneficiaries brought this action to recover damages and other remedies against the Bank for breaches of its fiduciary duty and duty of loyalty.

**{4}**      Following the bench trial, the district court ruled in favor of Beneficiaries but awarded damages in an amount lower than Beneficiaries believe they were entitled to receive.  Beneficiaries timely appealed the district court's judgment regarding the damages awarded.  The Bank timely filed a cross-appeal challenging the district court's imposition of liability in favor of Beneficiaries.  The additional facts and procedural history pertinent to each argument will be included in the appropriate section of the discussion below.

**DISCUSSION**

**{5}**      We first address the issue of liability raised by the Bank.  Because we affirm the district court on liability, we will then address Beneficiaries' challenge to the district court's determination of the amount of damages.

2

## I.  LIABILITY

**{6}**     The Bank had very little experience with commercial property management. However, in late 1991, it acquired a commercial building in Albuquerque (the Building) as an asset of the Trusts.  At some point prior to April 1995, the Building was unproductive of net income and a drain to the income and other assets of the Trusts.  The crux of the district court's liability determination revolves around the Bank's continued investment in the Building despite its status as a wasting commercial real estate asset.  The Will provided that the "Trustee shall not invest any portion of the [T]rust assets in unproductive property . . . but may retain unproductive property received into the trust."

**{7}**     In 1995, when the Bank became aware that the Building was unproductive, Patrick Schaefer, the trust officer responsible for administering the Trusts, stated in a handwritten note that the Building was "draining income of [the] trust."  Schaefer did not communicate this information to Beneficiaries.  Yet Schaefer instead told Beneficiaries that it would be prudent to "look into sale of [the] property."  After evaluating the Building and the other real property owned by the Trusts, however, the Bank instead recommended obtaining a $395,000 loan to renovate the Building.  Without disclosing the Building's unproductive status to the Beneficiaries, the Bank's recommendation stated, "[I]t is obvious that the most advantageous scenario to increase income would be to renovate the [Building] to a competitive condition."  The Bank advocated that Beneficiaries agree to sell the other properties owned by the Trusts and to use the proceeds from the sale to reduce the loan balance on the Building.  The Bank implemented this plan without objection from Beneficiaries.

**{8}**     In implementing its recommendations, the Bank borrowed from an affiliate entity in amounts much greater than the $350,000 amount initially approved by Beneficiaries.  It also proceeded to sell the other property belonging to the Trusts.  The record demonstrates, however, that the sales proceeds were not used to reduce the loan balance on the Building.  By 2003, the Bank had invested $800,000 of the Trusts' assets into the Building for the speculative purpose of reversing its declining condition.  As a result of this investment, the Bank was also able to produce $400,000 in "phantom income" for distribution to Beneficiaries.

**{9}**     After trial, the district court issued a letter decision against the Bank on the issue of liability.  Based on the Bank's conduct with regard to the Building, the district court found that the Bank had committed breaches of its fiduciary duty to the Trusts and its responsibility of loyalty to protect the best interest of the Beneficiaries by (1) investing in unproductive property, (2) failing to administer the trust prudently, (3) failing to preserve principal, and (4) failing to produce income.  The district court also found the Bank liable for at least four additional breaches of trust and loyalty based on conduct unrelated to the Building.  The district court did not enter findings or conclusions that correlated specific breaches of particular duties with all or any specific portion of the damages awarded.

3

**{10}** The Bank challenges the district court's liability determinations that the Bank owed certain duties as the trustee of the Trusts, breached its duties, and caused harm to Beneficiaries, as remainder beneficiaries of one of the Trusts. We address each challenge in turn.

## A. Standard of Review

**{11}** The issues raised by the Bank on cross-appeal involve only evidentiary challenges to the district court's findings of fact and conclusions of law. Thus, we apply a substantial evidence standard of review. *Koprian v. Mennecke*, 1949-NMSC-023, ¶ 5, 53 N.M. 176, 204 P.2d 440; *Roybal v. Morris*, 1983-NMCA-101, ¶ 30, 100 N.M. 305, 669 P.2d 1100. "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v. Sanchez*, 1990-NMSC-114, ¶ 7, 111 N.M. 137, 802 P.2d 1283. In reviewing a substantial evidence claim, "[t]he question is not whether substantial evidence exists to support the opposite result, but rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. "[W]e will not reweigh the evidence nor substitute our judgment for that of the [factfinder]." *Id.*; *Williams v. Williams*, 1989-NMCA-072, ¶ 7, 109 N.M. 92, 781 P.2d 1170 (explaining that the duty to weigh the credibility of witnesses and to resolve conflicts in the evidence lies with the trial court, not the appellate court). We consider the evidence in the light most favorable to the prevailing party and disregard any inferences and evidence to the contrary. *Williams*, 1989-NMCA-072, ¶ 7; *see Las Cruces Prof'l Fire Fighters*, 1997-NMCA-044, ¶ 12 (resolving all factual disputes in favor of the successful party and indulging all reasonable inferences in support of the prevailing party).

## B. Duties Owed by the Bank

**{12}** The Bank argues that the district court misapplied unambiguous terms in the Will and the relevant law when it defined the duties owed by the Bank as trustee of the Trusts. Specifically, the Bank disputes the district court's findings that it had duties to maintain a depreciation reserve, not to lend money to the Trusts, to treat Beneficiaries and Ann impartially, and not to allocate between principal and income. The Bank does not challenge the district court's findings that it owed four other duties as trustee: (1) a duty not to invest in unproductive property, (2) a duty to administer the trust prudently, (3) a duty to preserve trust principal, and (4) a duty to produce income. For the reasons that follow, we will not fully address the merits of this argument on appeal.

**{13}** The Bank's cross-appeal challenges the imposition of four duties, but the district court based its liability determination on at least eight distinct breaches of duty. The district court did not enter findings or conclusions correlating any breach of a particular duty with any portion or the entirety of the damages award, and the Bank asserted that Beneficiaries were entitled to one assessment of damages regardless of the number of separate duties that the district court might determine had been breached. *McCauley v. Ray*, 1968-NMSC-194,

4

¶ 11, 80 N.M. 171, 453 P.2d 192 ("[A] party litigant may not invite error and then take advantage of it." (internal quotation marks and citation omitted)). Thus, the Bank's liability for damages rests on the assumption that any one or all of the breaches found to exist by the district court caused the full decline in the value of the Trusts' assets. As a result, even if we were to determine that it was error for the district court to impose certain duties on the Bank as trustee, the Bank's cross-appeal concedes that the Bank properly owed four specific duties with regard to its administration of the Trusts and that a breach of any one of these other duties was sufficient to cause the damages claimed by Beneficiaries. *See* Rule 12-213(A)(4) NMRA ("A contention that a verdict, judgment[,] or finding of fact is not supported by substantial evidence shall be deemed waived unless the argument identifies with particularity the fact or facts that are not supported by substantial evidence[.]"); *Giovannini v. Turrietta*, 1966-NMSC-103, ¶ 4, 76 N.M. 344, 414 P.2d 855 ("The [district] court's findings, not properly attacked, are conclusive on appeal."). Therefore, we need only address the merits of the Bank's argument if we determine that the Bank did not breach any of the duties it owed as trustee of the Trusts. *See Newcum v. Lawson*, 1984-NMCA-057, ¶ 33, 101 N.M. 448, 684 P.2d 534 ("Even if a finding of fact or conclusion is erroneous, if it is unnecessary to the court's decision, the mistake is not a basis for reversal.").

**{14}** As we discuss below, the district court did not err in imposing liability against the Bank for the breach of its unchallenged duties as trustee of the Trusts. As a result, it is not necessary to address the Bank's argument regarding whether the district court may have erroneously imposed additional duties upon the Bank as the Bank contends.

## C. Breach of Duty

**{15}** We now address the Bank's contention that it was error to impose liability against the Bank for its continued investment in the Building. On cross-appeal, the Bank does not argue that its conduct did not breach the express terms of the Trusts or any of the four undisputed duties owed to Beneficiaries. Rather, the Bank asserts that it was error to hold the Bank liable for any possible breach of duty because Beneficiaries consented to or ratified the Bank's actions when it continued to invest in the Building. In response, Beneficiaries take the position that the Bank may not rely upon consent as a defense to liability because Beneficiaries were not fully informed of their rights or the material facts with regard to the Building.

**{16}** When a fiduciary relationship arises from a trust instrument, the fiduciary is held to a strict standard of care and loyalty, generally prohibiting the fiduciary or trustee from making non-traditional investments that put at risk the preservation of the corpus or the amount and regularity of income to be derived. *See State ex rel. King v. Lyons*, 2011-NMSC-004, ¶ 103, 149 N.M. 330, 248 P.3d 878 (reasoning that "[a] trustee's duties include the protection and management of the trust property to provide returns or other benefits to the trust[.]" (citing Restatement (Third) of Trusts § 86 cmt. b (2007))); *Pino v. Budwine*, 1977-NMSC-068, ¶ 9, 90 N.M. 750, 568 P.2d 586 ("A trust relationship imposes stringent and high standards of conduct upon the trustee."). However, this standard is considerably

reduced if a beneficiary consents to a deviation from the traditionally strict investment policies imposed upon a fiduciary. Restatement (Second) of Trusts § 216 (1959). Where the beneficiary has consented to an investment strategy with full knowledge of the material facts and their legal rights, the beneficiary may not later complain if the investment strategy results in a breach of trust. *Id.*; *see* NMSA 1978, § 46A-10-1008 (2003) (recompiled at NMSA 1978, § 46A-10-1009 (2007)).

**{17}** The Bank contends that Beneficiaries did not assert, and the district court did not find, that Beneficiaries were not fully informed of the Bank's actions. This contention does not properly represent the record. Instead, the record reflects that the district court addressed the disputed factual issues regarding informed consent by Beneficiaries and rejected Bank's requested findings of fact regarding whether Beneficiaries properly consented to and ratified the Bank's conduct and whether the Bank kept Beneficiaries reasonably informed about the administration of the Trusts, including the necessary material facts related to their interests. *See In re Yalkut*, 2008-NMSC-009, ¶ 18, 143 N.M. 387, 176 P.3d 1119 ("[F]ailure to make a finding of fact is regarded as a finding against the party seeking to establish the affirmative."). While the district court did not make more specific findings on this issue, the findings entered by the court include references that Beneficiaries received limited information about the Bank's actions, had many unanswered questions about the management of the Trusts, and the Bank actually misrepresented the value of the Building that was carried on its books. The issue is whether the evidence in the record is sufficient to reflect that the Bank did not reasonably inform Beneficiaries regarding the unproductive status of the Building or improperly advised Beneficiaries when the Bank was exercising its special skills and expertise to prudently administer and manage the Trusts' unproductive asset while also preserving trust principal and producing reasonable income.

**{18}** The record established that the Bank knew that the Building was unproductive of net income and draining the income and assets of the Trusts as early as April 1995. Yet the district court found that the Bank never accurately communicated this information to Beneficiaries, and the evidence supports these findings. Based upon its skills and expertise, the Bank also recommended that Beneficiaries deplete the Trusts' assets and reinvest them in the Building. This recommendation directly violated an express provision of the Trusts. *See Rutanen v. Ballard*, 678 N.E.2d 133, 139 (Mass. 1997) (finding a breach of fiduciary duty where a trustee has a duty to sell unproductive property and fails to do so). In addition, there was evidence that the Bank was not experienced in managing commercial real estate, but the Bank fails to identify any evidence in the record to establish that this deficiency was communicated to Beneficiaries. Without a fully informed consent or ratification from Beneficiaries, the Bank's imprudent conduct that resulted from rashly investing the entirety of the Trusts' assets in the unproductive and declining Building reflected a failure to exercise the reasonable care, special skills, or expertise required of a trustee. *See Mattocks v. Moulton*, 24 A. 1004, 1007 (Me. 1892) (reasoning that it is imprudent to invest trust funds in a new venture that is sensitive to market changes, has no working capital, and is liable to be overwhelmed "at the first unfavorable turn of affairs").

6

**{19}**  On cross-appeal, the Bank merely directs this Court to the evidence favorable to its argument and ignores the evidence relied upon by the district court in finding liability against the Bank.  The Bank points to Beneficiaries' alleged consent to certain actions but fails to address the evidence supporting the district court's findings regarding the Bank's fiduciary responsibilities and its deficient investment recommendations or decisions regarding the Building.  *See* Rule 12-213; *see also Aspen Landscaping, Inc. v. Longford Homes of N.M., Inc.*, 2004-NMCA-063, ¶¶ 28-29, 135 N.M. 607, 92 P.3d 53 (explaining that a party challenging a finding for lack of substantial evidence must refer to "all of the evidence, both favorable and unfavorable, followed by an explanation of why the unfavorable evidence does not amount to substantial evidence, such as is necessary to inform both the appellee and the Court of the true nature of the appellant's arguments").  Further, the Bank has not specifically identified or challenged any of the district court's findings that were entered to support the inferences regarding a lack of informed consent by Beneficiaries.  *See Giovannini*, 1966-NMSC-103, ¶ 4.  As a result, we affirm the district court's decision that Beneficiaries did not give fully informed consent.  *State v. Rojo*, 1999-NMSC-001, ¶ 53, 126 N.M. 438, 971 P.2d 829; *see Landavazo*, 1990-NMSC-114, ¶ 7 (explaining that the duty to weigh the credibility of witnesses and to resolve conflicts in the evidence is for the district court, and this Court will not reweigh the evidence or substitute our judgment for the trier of fact on appeal); *see also Hines v. Hines*, 1958-NMSC-098, ¶ 5, 64 N.M. 377, 328 P.2d 944 ("As to the [district] court's refusal of appellant's requested findings of fact, suffice it to say that the refused findings were diametrically opposed to or inconsistent with the facts properly found by the [district] court in support of the final decree and judgment.  Therefore, the refusal was not error.").

**{20}**  We conclude the record provides support for a determination that Beneficiaries were unaware of all the material facts regarding the Building and did not fully consent to the Bank's conduct.  It follows that the district court did not err in rejecting the Bank's requested findings of fact and conclusions of law that Beneficiaries were fully informed and consented to or ratified the Bank's conduct.  *See Fox v. Doak*, 1968-NMSC-031, ¶ 10, 78 N.M. 743, 438 P.2d 153 (concluding that it is not error for the district court to reject requested findings of fact where the requested findings are inconsistent with findings of the district court that are supported by substantial evidence); *see also Hines*, 1958-NMSC-098, ¶ 5.

### D.  Harm to Beneficiaries

**{21}**  The Bank's final contention challenges the district court's finding that it failed to keep adequate accounting records.  The Bank further asserts that even if it failed to keep adequate accounting records, Beneficiaries failed to show how any accounting errors caused them losses or resulted in any profit to the Bank.

**{22}**  We first note that, based on the Bank's inadequate record keeping and lack of financial evidence, the district court concluded that it would resolve all doubts related to the Trusts' administration against the Bank.  The Bank has not challenged this conclusion by the district court, and it is therefore conclusive on appeal.  *See Giovannini*, 1966-NMSC-103,

7

¶ 4 ("The [district] court's findings, not properly attacked, are conclusive on appeal."). Second, as previously discussed, the Bank's liability for damages rested on the unopposed presumption that any and all of the breaches of duty found to exist by the district court were the cause of the decline in the value of the Trusts' assets. Because the Bank has not challenged four of the undisputed fiduciary duties claimed to give rise to damages and because its defenses of waiver and ratification were not sufficient to defeat liability for the breaches of its fiduciary duties, damages for the decline in value of the Trusts were properly awarded, irrespective of the district court's ruling regarding inadequate record keeping. It is unnecessary to address the issue of inadequate record keeping any further. We conclude that the district court did not err in finding the Bank liable for damages to Beneficiaries resulting from the decline in value of the Trusts. We now address Beneficiaries' issues regarding the amount awarded as damages.

## II.   DAMAGES

{23}   The district court's damage award was calculated to restore the value of trust property lost through the Bank's mismanagement and breach of its fiduciary duty that started in late 1991. Relying on testimony from accounting expert Henry Carl South regarding the standard adjustment for inflation (the inflation adjustment) from 1991 to 2003 totaling "about 33.5 percent," the district court's ruling found that the $670,000 value of the Trusts in 1991 would have an inflation adjusted value expressed in 2003 dollars of $894,000. The remedy fashioned by the district court in its decision letter consisted of $894,000 in restoration damages plus prejudgment interest thereon, a $540,000 self-dealing disgorgement award for interest paid to the Bank, as well as post-judgment interest, costs, and attorney fees. In its decision letter, the court rejected Beneficiaries' claim that they should also recover trustee fees paid to the Bank in the amount of $173,710. It then ordered, "[Beneficiaries'] counsel shall prepare the judgment incorporating the above findings/conclusions" adopted by the district court in its decision letter.

{24}   Beneficiaries prepared a proposed form of judgment for presentment to the district court. The Bank disputed Beneficiaries' form of judgment and argued that it contained "impermissible damage[s]" because it: (1) failed to offset income distributions previously made from the Trusts to Beneficiaries in the amount of $404,421; (2) provided for a double recovery because it awarded both restorative damages and disgorgement of profits on the loan interest paid to the Bank; and (3) provided for an adjustment for inflation as part of the restorative damages. After hearing the parties' arguments at the presentment hearing, the district court agreed with the Bank and entered its proposed form of judgment awarding damages in the amount of $171,000 plus post-judgment interest, attorney fees, and costs.

{25}   The final judgment was an inconsistent mix of proposed findings and conclusions offered by Beneficiaries along with the award of damages in the amount requested by the Bank. Accordingly, it included the inflation adjustment for calculating the diminution of the value of Trusts assets at $894,000 but instead of using this amount to calculate restorative damages, it used $575,000, representing the decline in value without an adjustment for

8

inflation. The district court further explained that this $171,000 restorative damage amount also included the $540,000 in loan interest paid to the Bank. Thus, the total net damage amount award to Beneficiaries was only $171,000 rather than the higher amount adopted in the court's decision letter. It excluded any additional or alternative damages for the self-dealing disgorgement claim made by Beneficiaries even though the court entered findings of fact and conclusions of law determining liability on the Trusts' claim against the Bank for self-dealing.

**{26}** Beneficiaries filed a timely appeal of the judgment entered, arguing that the damages award is flawed in three ways: (1) despite the determination that an inflation adjustment was proper, the inflation adjustment was not included in the amount of damages calculated to properly restore the principal value of the Trusts; (2) the Bank was not entitled to an offset for the income distributions made from 1991 to 2003 against the damages awarded to restore the principal value of the Trusts to their proper 2003 level; and (3) the failure to award the $540,000 amount as disgorgement damages for improper self-dealing by the Bank. We first address the issues dealing with restorative damages and then discuss the award of disgorgement damages for self-dealing. As a result of our decision regarding restorative damages, we reject Beneficiaries' contention that they are also entitled to an additional disgorgement damage award of $540,000.

## A.   STANDARD OF REVIEW

**{27}** The parties disagree on the standard of review that applies to this issue. Beneficiaries contend that the proper measure of damages is a question of law that is subject to a de novo standard of review. The Bank contends that the question presents issues controlled by abuse of discretion and substantial evidence standards of review. Both parties appear to be partially correct regarding the standard of review.

**{28}** Generally, we review findings regarding damages to determine whether they are supported by substantial evidence. *See Jacobs v. Phillippi*, 1985-NMSC-029, ¶ 5, 102 N.M. 449, 697 P.2d 132. Damages need not be proven with mathematical certainty. *See Nosker v. W. Farm Bureau Mut. Ins. Co.*, 1970-NMSC-046, ¶ 8, 81 N.M. 300, 466 P.2d 866. Substantial evidence is "that which a reasonable mind accepts as adequate to support a conclusion." *Bill McCarty Constr. Co. v. Seegee Eng'g Co.*, 1988-NMSC-019, ¶ 7, 106 N.M. 781, 750 P.2d 1107. "[I]n determining the amount of damages to be awarded, the focus shifts to the objective of such an award: to fully compensate the plaintiff and to put the plaintiff in as good a position as if the harm or injury had not occurred." *Cent. Sec. & Alarm Co. v. Mehler*, 1996-NMCA-060, ¶ 17, 121 N.M. 840, 918 P.2d 1340. Likewise, "[t]he decision whether to order a defendant to disgorge profits and the amount of profits to be disgorged rests within the sound discretion of the [district] court." *Peters Corp. v. N.M. Banquest Investors Corp.*, 2008-NMSC-039, ¶ 32, 144 N.M. 434, 188 P.3d 1185. A discretionary decision based on a misapprehension of the law is reviewed de novo. *N.M. Right to Choose/NARAL v. Johnson*, 1999-NMSC-028, ¶ 7, 127 N.M. 654, 986 P.2d 450.

9

**{29}** Thus, we review de novo the question of whether the district court applied the correct law and its application of that law to the facts. *Id.* ¶¶ 7-8. After we determine whether the correct law has been applied, we then review the award to determine whether it is supported by substantial evidence and, finally, we review for any abuse of discretion. An abuse of discretion will require reversal "only if it [is] contrary to logic and reason." *Id.* ¶ 8 (internal quotation marks and citation omitted).

## B.    ADJUSTMENT FOR INFLATION

**{30}** We first address Beneficiaries' argument that it was error to use the value of $575,000 to calculate the amount of damage to the Trusts' principal because Beneficiaries were entitled to be made whole, and this would require including an adjustment for inflation. Beneficiaries assert that the inflation adjustment was required to restore the real principal value of the trust assets as of June 1, 2004, and should not have been excluded from the district court's damages award. The Bank does not dispute that Beneficiaries are entitled to be made whole but responds that an inflation adjustment would constitute an improper double recovery as Beneficiaries have already been compensated for this amount based upon the court's award of prejudgment interest. We disagree.

**{31}** This appeal arises from the Bank's actions as Trustee from 1991 through 2003. During this time period, the district court determined that the Bank breached its fiduciary duty when it improperly depleted the Trusts' assets for the purpose of improving the Building, an unproductive property. The district court's original decision letter and its final judgment concluded that the inflation adjusted amount required to restore the real value of the Trusts' assets from 1991 through June 1, 2004, was $894,000. This lawsuit was not filed by Beneficiaries until June 14, 2007. The Bank's only argument asserted that the inflation adjustment would provide a double recovery and duplicate the district court's additional award of prejudgment interest. Having accepted the Bank's argument, the district court in its judgment excluded the inflation adjustment from the damages award and calculated the amount required to restore the real value of the Trusts' assets on June 1, 2004 at $575,000, despite finding that "the inflation adjustment [was] *required* to keep [B]eneficiaries whole through 2003." (Emphasis added.)

**{32}** We agree with the district court's finding that the inflation adjustment was required to keep Beneficiaries whole and to properly calculate the amount needed to restore the real value of the trust for the period from the end of 1991 through June 1, 2004. *See Hubbard v. Albuquerque Truck Ctr., Ltd.*, 1998-NMCA-058, ¶ 15, 125 N.M. 153, 958 P.2d 111 ("[D]amage awards should provide full and just compensation for the injured party. Full and just compensation is synonymous with the concept of making the injured person whole." (internal quotation marks and citations omitted)). The adjustment for inflation accounted for the changes in the value or purchasing power of the dollar. *See* Dan B. Dobbs, *Handbook on the Law of Remedies*, § 3.7 at 366 (2d ed. 1993); *see also* NMSA 1978, § 46A-10-1002(A)(1), (2) (2003, amended 2007) ("A trustee who commits a breach of trust is liable to Beneficiaries affected for the greater of:  (1) the amount required to restore the value of

10

the trust property and trust distributions to what they would have been had the breach not occurred; or (2) the profit the trustee made by reason of the breach."); 2.60.25.9 NMAC (Recompiled 10/1/2001) (measuring income value in real dollars by adjusting for inflation); Restatement (Third) of Trusts § 100(a) (2011) (stating that a trustee who commits breach of trust is chargeable with "the amount required to restore the values of the trust estate and trust distributions to what they would have been if the portion of the trust affected by the breach had been properly administered"). The only issue this Court must address is the Bank's argument that the inflation adjustment would constitute a double recovery and overlap the recovery for prejudgment interest.

**{33}** Neither party disputes the award of prejudgment interest in this case. The award of prejudgment interest compensates Beneficiaries for the lost use of the real value of the Trusts from either June 1, 2004, or June 14, 2007, until the date that judgment was entered on February 9, 2011. *See Pub. Serv. Co. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 52, 131 N.M. 100, 33 P.3d 651 (explaining that the purpose of prejudgment interest is to "compensate a plaintiff for the lost opportunity to use the money owed between the time the plaintiff's claim accrued and the time of judgment").

**{34}** The district court determined that Beneficiaries' compensatory damages—the value of their Trust shares—were readily ascertainable as of June 1, 2004, the date on which the Trusts' assets became distributable to Beneficiaries. The district court also agreed that this amount was $894,000, including the inflation adjustment. Simply put, the evidence established that the adjustment for inflation (to account for the change in the value of the dollar from 1991 to 2004) does not duplicate the award of prejudgment interest (to account for the loss of Beneficiaries' use of their money from either 2004 or 2007 through 2011). Prejudgment interest was, therefore, necessary and appropriate to compensate Beneficiaries for the loss of use of the value of their Trust shares from either June 1, 2004, or the subsequent date this lawsuit was filed, June 14, 2007, until judgment was entered in this case on February 9, 2011. *See Ponder v. State Farm Mut. Auto Ins. Co.*, 2000-NMSC-033, ¶ 37, 129 N.M. 698, 12 P.3d 960 (explaining that the obligation to pay prejudgment interest "constitutes an obligation to pay damages to compensate a claimant for the lost opportunity to use money owed the claimant and retained by the obligor between the time the claimant's claim accrues and the time of judgment (the loss of use and earning power of the claimant's funds") (internal quotation marks and citation omitted)); *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549, 552 (Tex. 1985) ("The purpose of awarding prejudgment interest is to compensate the injured plaintiff for lost use of money due as damages between the accrual of the claim and the judgment."). Even if the district court were to award prejudgment interest back to June 1, 2004, there is no overlap.

**{35}** The undisputed facts in the record fail to support the Bank's argument that the prejudgment interest award also served to compensate Beneficiaries for the effects of inflation prior to June 1, 2004. In devising a remedy for the Bank's violation of its duties as trustee, the district court appropriately concluded that a proper trustee would have maintained the value of the Trusts from 1991 through 2004. *Cf. In re Trusteeship under*

11

*Agreement with Mayo*, 105 N.W.2d 900, 905 (Minn. 1960) (authorizing a trustee to deviate from the express terms of a trust for the purpose of preserving the value of the trust when changed conditions due to inflation impaired the dominant purpose of the trust). As a result, the Bank's argument fails. The award of prejudgment interest and the inflation adjustment are not duplicative. Adjusting for inflation "simply ensures that inflation does not erode the value of money; it does not compensate for the lost use of the money in the intervening time." *State of Kan. v. State of Colo.*, No. 105, 2000 WL 34508307, at *37 (U.S. 2000) (internal quotation marks and citation omitted). Beneficiaries are entitled to the inflation adjustment, and the district court should have determined the compensatory damages award by utilizing the $894,000 amount set forth in the court's findings of fact.

## A.    OFFSET FOR INCOME DISTRIBUTIONS

{36}    We now address whether it was proper for the district court to reduce compensatory damages by the amount of income distributions the Bank made to beneficiaries from 1996 to 2006. The district court allowed a reduction in the amount of $404,421 for these income distributions. Beneficiaries argue that using income distributions to offset restorative damages to the principal of the Trusts allowed the Bank to use the legitimate property of Beneficiaries to improperly offset liability for other damages they incurred. The Bank contends that the fact that income distributions were the property of Beneficiaries does not address the issue of whether the distributions were justifiable offsets against compensatory damages resulting from a decline in the principal value of the Trusts. We partially agree with both parties' arguments but the evidence in this case favors Beneficiaries' position.

{37}    It is undisputed that the Trusts had a net value of $669,996.07 in 1991 and consisted of the Building and other real property in Virginia, Hawaii, and New Mexico. At the end of 2003, all of the real property except the Building had been sold. The Building was a wasting asset with a net value of $129,033.38. During the same period, the return on trust assets—or income—was negative.

{38}    The Trusts were created with two unambiguous central purposes: providing income to the lifetime beneficiaries and, upon Wife's death, distributing the principal of the Trusts to Beneficiaries. Invasion of the principal of the Trusts to make distributions to the income beneficiaries was not allowed under the terms of the Trusts. Where the Trusts were created for both income and remainder beneficiaries, and where the trust assets included unproductive property, the Bank was under a duty to convert the unproductive property within a reasonable time and to invest the proceeds in productive property. *See* 4 Austin Wakeman Scott, William Franklin Fratcher & Mark L. Ascher, Scott and Ascher on Trusts § 20.8 at 1559-60 (5d ed. 2006) (requiring, if any part of trust property should become unproductive property, that a trustee take action to protect the income beneficiary's interests or to convert the unproductive property into income-producing property). The Bank held the unproductive Building for its entire term as trustee and did so at the expense of all other assets of the Trusts. Despite the negative return on the principal value of the Trusts' assets, the Bank further depleted principal when it paid out $404,421 as income distributions to the

12

lifetime beneficiaries. The Bank now asserts that it is entitled to reduce the compensatory damages that it caused to the principal value of the Trusts by the $404,421 paid to the lifetime beneficiaries as income distributions. *See* Restatement (Second) of Trusts, § 209 illus. 1 (1959) (allowing an offset to damages for the dividends received during the period that the trustee should have, but did not, sell the property); *but see* Restatement (Third) of Trusts, § 101 cmt. a (2012) ("[T]he law is well settled that profits arising from *proper* administration do not reduce a trustee's liability for breach of trust; it would be ironic to permit a profit from *improper* administration to be offset against a trustee's liability.").

{39}    The argument proffered by the Bank relies on two fatal assumptions: (1) that the lifetime beneficiaries were not entitled to reasonable distributions of income from the Trusts and that the Bank was not obligated to keep the Trusts productive of income for their benefit; and (2) that the improper retention of the unproductive Building resulted in some "net gain" to the lifetime beneficiaries of the Trusts. Here, the $404,421 of so-called trust income was produced by investing $800,000 of borrowed funds into the Building at a point when the Building continued to be a wasting asset. The district court recognized that this phantom trust income was produced from the $800,000 investment in the Building. The total return of the Building remained negative, and any distributions the Bank allocated as income to the lifetime beneficiaries were actually made from the principal of the Trusts. *See, e.g.*, *In re Winthrop's Estate*, 6 N.Y.S.2d 539, 541 (N.Y.Sur. 1938) (refusing to permit a trustee to make up a deficiency in income for failure to sell unproductive property out of the principal of a trust); *Stone v. Littlefield*, 24 N.E. 592, 593 (Mass. 1890) (charging expenses incurred to maintain unproductive property yielding no income to trust principal for the protection of a life-tenant beneficiary who would otherwise receive nothing).

{40}    No evidence was offered by the Bank to indicate that the $404,421 in income distributions exceeded the amount that would have been actually received by the lifetime beneficiaries if the Bank had timely sold the Building and properly invested the principal in assets that produced a reasonable rate of return, while continuing to preserve principal. As a result, there is no evidence of a "net gain" of income distributed to the lifetime beneficiaries of the Trusts from 1996 to 2006. When the Bank was trustee and managed the Building, it had a duty to preserve the principal value of the Trusts and to also produce a reasonable return in order to make the required income distributions to the lifetime beneficiaries. Thus, the proper measure of damages is the amount required to restore the value of the trust estate and all of its income distributions to what they would have been if the trust had been properly administered. *See* Restatement (Third) of Trusts § 100 cmt. b (2012); *see also* Restatement (Second) of Trusts § 205 (1959); *see also* § 46A-10-1002(A)(1), (2).

{41}    Beneficiaries chose not to present any evidence to establish their damages arising from the amount of additional income distributions that should have been made if the Bank had properly administered the Trusts. If Beneficiaries had pursued damages for lost income, the district court may have been authorized to subtract the $404,421 in income distributions actually paid from the proper amount of income distributions that should have been paid to

Beneficiaries, thereby producing a "net gain" or a "net loss." If the net calculation would have resulted in a benefit to the Bank's position, it could have presented this evidence as well. The net amount might have then adjusted the $894,000 in compensatory damages awarded to restore the principal value of the Trusts. Without any evidence of a net gain or net loss, the district court abused its discretion when it offset the compensatory damage award by the $404,421 in income distributions made from 1996 to 2006. No such offset can be calculated in this case. We reinstate the full inflation adjusted compensatory damage award of $894,000 that would restore the principal value of the Trusts.

## B.    DISGORGEMENT

**{42}**    We now address Beneficiaries' argument that it is entitled to an additional damages award of $540,000 as a proper disgorgement of profits to the Bank for self-dealing arising from the $800,000 in loans to the Trusts. The district court agreed with the Bank and did not include the disgorgement award in the final judgment because it found that the amount was included by definition in the compensatory damage award to restore the principal value of the Trusts. We agree with the Bank and hold that an award of disgorgement damages in this particular case would constitute a double recovery.

**{43}**    "Disgorgement is an equitable remedy whereby a wrongdoer is forced to give up the benefits obtained as a result of his wrongdoing." *Peters Corp.*, 2008-NMSC-039, ¶ 32. The remedy of disgorgement is not a punitive remedy. *See id.* (requiring a causal connection to exist between the breach and the benefit sought to be disgorged); *S.E.C. v. Blatt*, 583 F.2d 1325, 1335 (5th Cir. 1978) ("Disgorgement is remedial and not punitive. The court's power to order disgorgement extends only to the amount . . . by which the defendant profited from his wrongdoing."). "The decision whether to order a defendant to disgorge profits and the amount of profits to be disgorged rests within the sound discretion of the [district] court." *Peters Corp.,* 2008-NMSC-039, ¶ 32; *see United Props. Ltd. v. Walgreen Props., Inc.*, 2003-NMCA-140, ¶ 7, 134 N.M. 725, 82 P.3d 535 ("[T]he issue of how the district court uses its equitable powers to provide an appropriate remedy is reviewed only for abuse of discretion."

**{44}**    "It is a well-settled rule that a trustee can make no profit out of his [position to administer a] trust. The rule . . . springs from [the trustee's] duty to protect the interests of the estate, and not to permit his personal interest to in any wise conflict with his duty in that respect. The intention is to provide against any possible selfish interest exercising an influence which can interfere with the faithful discharge of the duty which is owing in a fiduciary capacity." *Magruder v. Drury*, 235 U.S. 106, 119 (1914) (internal quotation marks and citation omitted). However, a fundamental rule of damages prohibits multiple recovery for a single harm. *Salazar v. Torres*, 2007-NMSC-019, ¶ 20, 141 N.M. 559, 158 P.3d 449. "[E]quity will not act if there is a complete and adequate remedy at law." *Sims v. Sims*, 1996-NMSC-078, ¶ 28, 122 N.M. 618, 930 P.2d 153 (internal quotation marks and citation omitted). The fact that Beneficiaries seek to recover two types of damages—restorative and disgorgement—does not convert a single claim into multiple claims. Instead, Beneficiaries have offered alternative theories of recovery in pursuit of one claim. Section 46A-10-

14

1002(A)(1), (2) ("A trustee who commits a breach of trust is liable to Beneficiaries affected *for the greater of*: (1) the amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred; *or* (2) the profit the trustee made by reason of the breach." (emphasis added)); *see Eckman v. Columbia Oldsmobile, Inc*., 585 N.E.2d 451, 452-53 (Ohio Ct. App. 1989) (prohibiting duplicative recovery for an injury that had been "cured" by an earlier award of relief).

**{45}** A restorative award of damages from a trustee is based on the equitable principle of making the beneficiary whole by placing the beneficiary in the position that he/she would have been in if the trustee had performed the required duty. *See* § 46A-10-1002; Restatement (Third) of Trusts § 100 ("A trustee who commits a breach of trust is chargeable with (a) the amount required to restore the values of the trust estate and trust distributions to what they would have been if the portion of the trust affected by the breach had been properly administered; *or* (b) the amount of any benefit to the trustee personally as a result of the breach." (emphasis added)); Restatement (Second) of Trusts § 205 ("If the trustee commits a breach of trust, he is chargeable with (a) any loss or depreciation in value of the trust estate resulting from the breach of trust; *or* (b) any profit made by him through the breach of trust; *or* (c) any profit which would have accrued to the trust estate if there had been no breach of trust." (emphasis added)). In compensating Beneficiaries, the district court put them in the place they would have been if the Bank had never engaged in its self-dealing. Because the disgorgement damages of $540,000 were less than the $849,000 in compensatory damages awarded by this Court to make Beneficiaries whole, any additional recovery for disgorgement would amount to a double recovery and improperly impose a penalty on the Bank. *See Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 399 (1940) (holding that the remedy of disgorgement is meant "not to inflict punishment but to prevent an unjust enrichment by allowing injured complainants to claim that which . . . is theirs, and nothing beyond this" (internal quotation marks and citations omitted)).

**{46}** Plaintiffs are entitled to be fully compensated, but there can only be one recovery. The district court's initial award set forth in the decision letter, as now reinstated by this Court, made Beneficiaries whole and effectively included the $540,000 Beneficiaries also claimed for disgorgement damages. Equity will not allow an award beyond the amount required to make Beneficiaries whole. As a result of this Court's redetermination of restorative damages in the amount of $849,000, the district court did not abuse its discretion in refusing to award further disgorgement damages of $540,000 to Beneficiaries.

**CONCLUSION**

**{47}** For the foregoing reasons, we deny the cross-appeal filed by the Bank and affirm the district court's judgment of liability against the Bank. We correct the district court's compensatory damages award to properly reflect the inflation adjustment amount submitted by Beneficiaries. This adjusted amount is not offset by the income distributions to Beneficiaries. The proper compensatory damages amount required to restore the principal value of the Trust's assets was $894,000. We deny Beneficiaries' appeal requesting an

15

additional compensatory damages award of $540,000 for disgorgement damages. We remand to the district court for the entry of a final judgment consistent with our decision.

**{48}  IT IS SO ORDERED.**

_____
**TIMOTHY L. GARCIA, Judge**

**WE CONCUR:**

_____
**CYNTHIA A. FRY, Judge**

_____
**J. MILES HANISEE, Judge**

**Topic Index for _Miller v. Bank of America, N.A._, No. 31,463**

**APPEAL AND ERROR**
Standard of Review
Substantial or Sufficient Evidence

**COMMERCIAL LAW**
Fiduciary Duty
Financial Institutions

**NEGLIGENCE**
Breach of Duty

**REMEDIES**
Compensatory Damages
Credits and Offsets

**WILLS, TRUSTS, AND PROBATE**
Fiduciary Duty
Trusts, General